UNITED STATES of America, Appellee,

v.

Elaine BRYANT, Appellant.

No. 674, Docket 72–2294.

United States Court of Appeals, Second Circuit.

Argued March 7, 1973.

Decided June 4, 1973.

---

Phylis Skloot Bamberger, New York City (Robert Kasanof, The Legal Aid Society, New York City, on the brief), for appellant.

Bernard J. Fried, Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., and L. Kevin Sheridan, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before LUMBARD and TIMBERS, Circuit Judges, and WYZANSKI, District Judge.[*]

TIMBERS, Circuit Judge:

Appellant Elaine Bryant appeals from a judgment of conviction entered upon a jury verdict returned July 18, 1972 after a five day trial before John R. Bartels, District Judge, in the Eastern District of New York, finding appellant guilty on one count of conspiracy to import cocaine into the United States, in violation of 21 U.S.C. § 952(a) (1970).[1]

The chief issue on appeal is whether the trial judge committed reversible error in allowing in evidence a certain tape recording and a transcript of the tape before first examining the tape for audibility and the transcript for accuracy. A subordinate claim of error, raised for the first time on appeal, asserts a violation of appellant's Fifth Amendment right to remain silent.

We affirm.

## I.

On February 10, 1972, one Alberto McKenzie arrived at John F. Kennedy International Airport on a flight from the Republic of Panama. During a routine customs inspection, it was discovered that he was carrying in his coat three bags of cocaine weighing a total of about four pounds.

According to the evidence developed during the government's direct case, McKenzie, a Panamanian citizen, was transporting cocaine for a man who called himself Surcidor Many. McKenzie and Many had become acquainted at a bar in Colon, Panama. After several meetings, Many asked McKenzie if he wanted to earn some money by taking cocaine to the United States. McKenzie accepted the offer. He was given money for an airline ticket, an extra $100 for expenses, three packages of cocaine, and a gold ring. He was instructed to deliver the cocaine and the ring to a person in New York City named "Elaine" who "lives with Beverly". McKenzie was given Elaine's telephone number and was told to call her upon arrival. He was to be paid $1500 at the time of delivery of the cocaine. He was told to tell customs inspectors that while he was in the United States he would be staying with a person named "Sisto Martinez".

After his arrest, McKenzie agreed to cooperate with customs agents by executing the plans for delivery of the cocaine. From the customs office, he called the telephone number given to him by Many and spoke to a person who identified herself as Elaine. She gave him her address and told him to come right over. The entire telephone conversation between McKenzie and Elaine was monitored and taped with the consent of McKenzie. Later the tape was transcribed. Both the tape and transcript

---

[*] Senior District Judge of the District of Massachusetts, sitting by designation.

1. The one count indictment, returned February 17, 1972, charged appellant and defendant Alberto McKenzie with conspiring amongst themselves and with others to import into the United States from the Republic of Panama approximately four pounds of cocaine, a Schedule II controlled narcotic substance, in violation of 21 U.S.C. § 952(a) (1970). McKenzie originally pled not guilty. On July 12, 1972, after being advised of his rights, he withdrew his plea and entered a plea of guilty as charged. He testified as a government witness at appellant's trial. On September 15, 1972, he was sentenced to a three year prison term and to a special parole term of three years.

On November 10, 1972, appellant was sentenced to a five year prison term, pursuant to 18 U.S.C. § 4208(a)(2) (1970), and to a special parole term of three years. She has been enlarged on bail pending appeal.

were admitted without objection at appellant's trial. No claim of error is raised on appeal regarding the admissibility of this tape and transcript.

McKenzie was provided with three simulated packages containing flour and a small amount of cocaine. He was outfitted with a Kell transmitter (a bugging device). Accompanied by customs agents, he proceeded to Elaine's address which had been given to him over the telephone. The agents remained outside the apartment in the adjacent hallway. McKenzie was greeted by appellant to whom he delivered the cocaine and the ring. When McKenzie requested payment, appellant told him that she would have to call "Sisto" about it. McKenzie appeared to be in a hurry; so appellant gave him $500 and told him to come back the next day for the other $1000. The entire conversation between McKenzie and appellant was monitored and recorded by an agent stationed in the hallway. As with the earlier wiretap recording, the customs agents made a transcript of this latter recording. Both the tape and transcript of this conversation were admitted as evidence at appellant's trial. Appellant does challenge the admissibility of this tape and transcript.

At about 11:30 P.M. on February 10, immediately after this conversation at appellant's apartment, the agents entered the apartment. They arrested appellant and one Beverly Davis who also was in the apartment at the time. Appellant was advised of her constitutional rights by Agent Keller, one of the arresting officers. She declined to make a statement. She and Davis were taken to the customs office at 201 Varick Street for processing.

At approximately 12:30 A.M. on February 11, appellant again was advised of her rights, this time by Agent Sessa, another of the arresting officers. She expressly waived her rights and made an oral statement to Agent Sessa. Appellant stated that she knew McKenzie, whom she had told to come to her apartment when he called her, and that she

had given him $500, telling him that "tomorrow I would give him the other $1000.00." She stated that McKenzie had brought with him three packages and a gold ring with the initials "E.B." When asked by Agent Sessa what was in the packages, she answered "cocaine". When asked who was to pick up the packages, she declined to answer. At that point the interview was terminated by Agent Sessa. The processing and interviewing was completed at about 2:00 A.M. Appellant was permitted to rest for the remainder of the night.

At about 10:00 A.M. the next morning, February 11, appellant made a second statement in the office of Assistant United States Attorney Sheerin. During this interview appellant answered the question she previously had refused to answer. She stated that Jose Cisco Martinelli called her on February 8 to tell her to anticipate McKenzie's arrival with the packages on February 10. She also stated that Martinelli told her that he would pick up the packages sometime after February 11.

At trial, appellant sought to defend herself by testifying in substance that she was not aware that she was participating in an unlawful conspiracy. She testified that she had dated a man named Cisco Martinelli; that, while Martinelli was visiting in Panama, they communicated several times by telephone; that the day before her arrest, Martinelli had called her, told her that a friend named Albert was coming to New York, and asked that she lend Albert $500; that Martinelli had said that his friend would have a ring for her and a package which Martinelli wanted her to hold until Martinelli's return to New York. She further testified that Albert had called, had come to her apartment, and had asked for $1500 rather than the expected $500; and that, upon being surprised by this excessive request, she offered to call Cisco but, since Albert wanted to join his friends, he took $500. Finally, appellant denied making any statements to Agent Sessa. She testified that all she did was write down

Martinelli's name while she was in the United States Attorney's office.

## II.

■ Appellant's first contention is that the trial judge improperly permitted the jury to listen to the tape recording of the conversation between McKenzie and herself at her apartment, and improperly permitted the jury to examine a transcript of that tape recording.[2] In support of her contention, appellant makes three interrelated arguments: (1) that the judge failed to examine the tape and transcript and failed to rule on their admissibility out of the presence of the jury; (2) that the tape should have been excluded because it was substantially inaudible; and (3) that the transcript should have been excluded because it did not accurately reflect what was recorded on the tape.

At a pre-trial suppression hearing, the entire transcript of the Kell transmission of the conversation between McKenzie and appellant at the latter's apartment was read aloud. The garbled or inaudible portions were identified. The tape was not played at this time. In fact, the first time the judge heard the tape was when it was played to the jury. The judge did not listen to the tape to determine its audibility or to ascertain the accuracy of the transcript before both were presented to the jury. This procedure was improper.

The correct procedure would have been for the judge to have had the tape played out of the presence of the jury so that he could have ruled on any objections before the jury heard the recording. Gorin v. United States, 313 F.2d 641, 651–62 (1 Cir. 1963), cert. denied, 379 U.S. 971 (1965); Todisco v. United States, 298 F.2d 208, 211 (9 Cir. 1961), cert. denied, 368 U.S. 989 (1962); Mon-

roe v. United States, 234 F.2d 49, 55 (D.C.Cir. 1956), cert. denied, 352 U.S. 873 (1956). Such procedure would have enabled the judge to rule on all objections, including the competence of the tape, before it was played to the jury. And the transcript should have been compared against the tape before the transcript was given to the jury. See United States v. Lawson, 347 F.Supp. 144, 148 (E.D.Pa.1972).

Nevertheless, failure to follow this procedure does not require reversal. The indicated procedure is intended to avoid a mistrial or reversal resulting from an inaudible and prejudicial tape being played to the jury or an inaccurate transcript being submitted to them. Cf. United States v. Tortorello, 480 F.2d 764, 785, n. 18 (2 Cir. 1973). The absence of a preliminary examination by the judge is not in itself ground for reversal. We turn to a consideration of whether the tape and transcript in the instant case were inadmissible and prejudicial.

### (A) *Admissibility of the Tape*

■ Appellant did not object to admission of the tape on the ground that it was inaudible. We have examined the record and find that at no point, either before or after the tape was played, did defense counsel object to the jury's listening to the tape. Accordingly, appellant is not entitled as a matter of right to raise this issue on appeal. United States v. Wright, 466 F.2d 1256, 1259 (2 Cir. 1972). Despite appellant's failure to object to the admission of the tape, however, we could notice the alleged error under Fed.R.Crim.P. 52(b). See United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965) (en banc), cert. denied, 383 U.S. 907 (1966).[3] For the reasons stated below, we decline to do so.

2. The tape recording of the earlier telephone conversation between McKenzie and appellant was of a high quality with almost all the conversation coming through clearly. Its admission was not objected to by defense counsel. Similarly, the transcript of that tape also was admitted in evidence without objection.

3. The power to notice plain error is one that we exercise only where the fundamental fairness of the trial is affected. See, e. g., United States v. Haynes, 291

■ Although we have not listened to the tape, we have read the transcript of the tape. Moreover, we have examined the record to observe the reactions of the judge and the jurors as they listened to and commented on the garbled portions of the tape. It is plain that some parts of the tape were totally inaudible. Other parts were so garbled that only some jurors were able to understand what was being said. But the mere fact of some inaudibility does not require exclusion:

> "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge." Monroe v. United States, *supra*, 234 F.2d at 55.

We cannot say that the parts of the tape which are clearly audible are without evidentiary value. Nor can we say that the inaudible parts are so substantial as to render the remainder more misleading than probative. While the chain of recorded conversation was weak in places, it was never completely broken. Moreover, the jury was fully apprised of the possible inaccuracy and unreliability of the tape through the testimony of witnesses and the arguments of counsel.

■■ Whether a recording is sufficiently audible to be probative is a matter within the sound discretion of the trial judge. United States v. Weiser, 428 F.2d 932, 937 (2 Cir. 1969), cert. denied, 402 U.S. 949 (1971); United States v. Kaufer, 387 F.2d 17, 19 (2 Cir. 1967). Here the trial judge did not abuse his discretion in admitting the tape in evidence.

Finally, we note that the judge recognized that parts of the tape were difficult to understand and sought to alleviate the problem. He gave the jurors ample opportunity to comprehend what was being said. First, the tape was played through completely in the courtroom, but the jurors had trouble understanding it—chiefly because the only playback equipment available to the government was inadequate for a room as large as the courtroom. The judge then moved the jury and counsel to the jury room, a more confined area, to listen to the tape again. Finally, the jurors were permitted to listen to the tape individually through a set of headphones. We are satisfied that this procedure had the effect of enabling the jurors to understand most of the tape.

But even assuming that it was error to admit the tape, we are satisfied that, for the same reasons that the admission of the transcript of the tape was not prejudicial error, the admission of the tape itself could not have been so prejudicial as to call for reversal.

Under these circumstances, we hold that the failure of the trial judge to listen to the tape before it was played to the jury was not plain error sufficient to warrant reversal.

(B) *Admissibility of the Transcript*

■ Appellant did object to the admission of the transcript of the tape just referred to on the ground that the transcript was inaccurate. As early as the pre-trial suppression hearing, she requested a hearing to determine whether the transcript conformed with the tape. When the transcript was offered in evidence, appellant objected on the ground that it was self-serving and incomplete. This objection was renewed several times while the jury was comparing the tape with the transcript. The claim has been preserved for appeal.

The judge allowed the jury to use the transcript solely as an aid in understanding the tape. He allowed such use only after Agent Featherly, the agent

F.2d 166, 167 (2 Cir. 1961). Only if serious injustice was inflicted upon a defendant, or if he was convicted in a manner inconsistent with fairness and integrity of judicial proceedings, will we exercise our power under the plain error rule. See United States v. Atkinson, 297 U.S. 157, 160 (1936). Neither situation is present here.

who prepared the transcript, testified that the transcript was true and accurate. We have approved the procedure of admitting transcripts as an aid in listening to tape recordings where the transcripts were stipulated to be accurate. United States v. Koska, 443 F.2d 1167, 1169 (2 Cir.), cert. denied, 404 U. S. 852 (1971). See also Fountain v. United States, 384 F.2d 624, 632 (5 Cir. 1967), cert. denied sub nom. Marshall v. United States, 390 U.S. 1005 (1968); United States v. Hall, 342 F.2d 849, 853 (4 Cir.), cert. denied, 382 U.S. 812 (1965). In the instant case, however, there was no stipulation as to the accuracy of the transcript. It appears that certain words and phrases were omitted from and added to the transcript. Under these circumstances, it was improper to admit the transcript in evidence.[4]

While it would have been better to have excluded the inaccurate transcript entirely, we are satisfied that appellant was not prejudiced. The overall procedure which the judge followed was intended to prevent the jury from being misled by any errors in the transcript. The judge admitted the transcript subject to any corrections which might appear from playing the tapes. Each juror was instructed to strike out on his copy of the transcript any statements he personally did not hear when the tape was played. Thus, the jurors were warned that the transcript might be inaccurate and not to rely heavily upon its accuracy. Once the judge realized the problems with the playback equipment and the inaudibility of portions of the tape, his instructions went even further:

> "It is the tape recorder that counts, not the transcript. The transcript was given to you in order that this might assist you in understanding the tape recorder.
>
> *   *   *

I will ask you to just rely upon what you actually heard from the tape recorder.

If you haven't heard it from the recorder, then you disregard the transcript, if the recorder does not conform.

As I said before, the transcript was given to you only to assist you in hearing the actual tape."

We are satisfied that these repeated cautionary instructions eliminated whatever harmful effect that might otherwise have resulted from any discrepancies between the tape and the transcript. See United States v. Lawson, 347 F. Supp. 144, 149 (E.D.Pa.1972). We hold that the judge, through his careful and emphatic instructions, cured whatever initial error may have been committed in allowing the jury to see the inaccurate transcript.

Furthermore, the primary evidentiary function of the tape and transcript was to corroborate or dispute the testimony of McKenzie and appellant. The audible portions of the tape, as reflected in the transcript, were completely consistent with the testimony of McKenzie. And they also were consistent with the testimony of appellant. Indeed, the testimony of appellant and that of McKenzie differed only as to the portions that were not audible, and as to the meaning to be given to the audible words in the context of their meeting. We are left with the firm conviction that appellant was in no way prejudiced.

We hold that admission of the tape recording and the transcript, under the circumstances of this case, did not constitute reversible error.

### III.

■ Appellant's second contention is that the admission in evidence of statements she made during the interview

---

4. We recognize that in a proper case it may be appropriate to admit a transcript to assist the jury in comprehending a tape recording. In such case, it would be advisable to follow the procedure approved in United States v. Carson, 464 F.2d 424, 436–37 (2 Cir.), cert. denied, 409 U.S. 949 (1972).

with Assistant United States Attorney Sheerin on the morning of February 11 violated her Fifth Amendment privilege against self-incrimination.

Appellant's argument is as follows. She did agree during the early morning hours of February 11 to make a statement to Agent Sessa, after being informed of her rights. She then answered many questions. But when Agent Sessa asked her who was to pick up the packages of cocaine, she refused to answer. Agent Sessa then terminated the interview. Before the interview could be resumed, appellant argues, it was necessary for the government interviewer to repeat the warnings required by Miranda v. Arizona, 384 U.S. 436, 467–79 (1966), and to have reasonable grounds to believe that appellant voluntarily had changed her mind about not making any further statements. United States v. Collins, 462 F.2d 792 (2 Cir.) (en banc), cert. denied, 409 U.S. 988 (1972). The record does not indicate whether Sheerin, before he resumed the interview later that morning, gave new and adequate Miranda warnings or whether there was a reasonable basis for his inferring that appellant had changed her mind. Appellant contends that the admission in evidence of her statements to Sheerin constitutes reversible error.

The record discloses, however, that appellant did not claim in the district court that the admission of these statements violated her Fifth Amendment privilege. Prior to trial, a preliminary hearing was held to determine whether certain evidence should be suppressed. Included among the evidence challenged at the hearing were the oral statements made by appellant to Agent Sessa several hours after her arrest and those made to Assistant United States Attorney Sheerin later that morning. The grounds urged by appellant for suppression were that "the warnings that were read to [appellant] were unclear as to the right that she had at that present time to have an attorney present" and that there was an unreasonable delay in the arraignment of appellant. The judge denied the motion to suppress on these grounds and they have been abandoned on appeal.

At the pre-trial hearing, appellant did not claim that her statements made to Sheerin at the second interview should be suppressed on the ground that the interrogation had been terminated when she refused to answer Sessa's last question. Nor was this claim asserted at any time during the trial. Appellant's failure to raise this specific claim in the district court precludes her from raising it on appeal. United States v. Repetti, 364 F.2d 54 (2 Cir. 1966); United States v. Indiviglio, 352 F.2d 276, 279 (1965) (en banc), cert. denied, 383 U.S. 907 (1966).

In Indiviglio, we held that a specific objection, if overruled, will be preserved for appeal only to the extent of the grounds specified, and no further. 352 F.2d at 279. Here the objection in the district court to the admission of appellant's statements to Sheerin clearly was not based on the claim that appellant might have indicated to Sessa that interrogation must cease. Consequently such claim is not available to appellant on appeal.

This case is a striking illustration of the wisdom of the rule that an objection must state accurately the basis for the claimed inadmissibility and must state such basis with a reasonable degree of specificity. See, e. g., United States v. Frascone, 299 F.2d 824, 827 (2 Cir.), cert. denied, 370 U.S. 910 (1962); United States v. Ladson, 294 F.2d 535, 538–40 (2 Cir. 1961), cert. denied, 369 U.S. 824 (1962). The reason for requiring that the specific ground for objection be made clear is to afford the trial judge an opportunity to remedy any claimed error and to afford the government an opportunity to come forward with evidence relative to the claim of admissibility, and thereby to avoid unnecessary further proceedings. The grounds for inadmissibility asserted in the district court here required the judge to determine only whether the pre-arraignment delay was reasonable

and whether the initial warnings reasonably apprised appellant of her right to counsel. A precise objection on the grounds now asserted for the first time on appeal would have required a pre-trial hearing to be held on the circumstances surrounding the Sheerin interview. Alternatively, upon proper objection at trial, the judge might have conducted a *voir dire* into these circumstances before admitting in evidence appellant's statements to Sheerin. Either inquiry might have satisfied the judge that the interview was entirely proper. On the other hand, a proper and timely objection might have resulted in suppression of the statements made by appellant to Sheerin. Appellant's failure to make such objection left these matters unexplored. We hold that it is too late in the day for appellant to raise this claim for the first time on appeal.

Affirmed.