UNITED STATES of America,
Appellee,

v.

Michael CHIARIZIO, Appellant.

No. 317, Docket 75–1224.

United States Court of Appeals,
Second Circuit.

Argued Oct. 10, 1975.

Decided Nov. 11, 1975.

Maxwell Heiman, Bristol, Conn. (Furey, Donovan & Heiman, P. C., Bristol, Conn.), for appellant.

Richard S. Stolker, Atty., Dept. of Justice, Washington, D. C. (Peter C. Dorsey, U. S. Atty., D. Conn., Hartford, Conn., Paul E. Coffey, Sp. Atty., and Jerome M. Feit, Atty., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

On April 24, 1975, appellant Michael Chiarizio was convicted, along with two co-defendants, in the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Judge*, of violating and of conspiring to violate the federal gambling statutes, 18 U.S.C.

§§ 2, 371 and 1955.[1] The indictment upon which he was convicted charged Chiarizio with participating in an extensive gambling network in the spring of 1973, located in the general vicinity of Hartford, Connecticut.

The case against Chiarizio depended almost entirely upon tapes and transcripts of telephone conversations intercepted and recorded by government agents pursuant to court orders issued by Judge Blumenfeld. The intercepted conversations, admitted at trial, indicated that Chiarizio and his co-conspirators placed and received bets over the telephone on a frequent and continuing basis. From this evidence, the jury concluded that an active gambling conspiracy existed in the Hartford area and that appellant Chiarizio was part of it.

At a pretrial suppression hearing held in January of 1975, *United States v. Chiarizio*, 388 F.Supp. 858 (D.Conn.1975), Chiarizio sought to exclude this wiretap evidence on a variety of statutory and constitutional grounds. *Chiarizio, supra*

at 866. Judge Blumenfeld overruled Chiarizio's objections at the hearing, the wiretap results subsequently went into evidence at the trial and Chiarizio, along with his co-defendants, was convicted on both the substantive and conspiracy counts.

Chiarizio now appeals his conviction on a variety of grounds, including a renewed objection to the introduction of the wiretap evidence. For the reasons outlined below, we reject all claims of error and affirm the conviction.

## I. THE WIRETAP APPLICATION AND ORDER

■ The federal statute under which Judge Blumenfeld authorized the Chiarizio wiretap requires both the applicant for the court order and the court itself to specify the person, "if known," who is believed to be committing the crime under investigation and who is therefore to be put under electronic surveillance. 18 U.S.C. §§ 2518(1)(b)(iv) and 2518(4)(a).[2]

1. 18 U.S.C. § 2 reads as follows:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 371 reads in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1955 reads in pertinent part:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling changes therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

2. 18 U.S.C. § 2518(1)(b)(iv) reads as follows:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

*	*	*	*	*	*

(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including . . . (iv) the

The legal standard to be applied under this statute has been explicitly established by the Supreme Court in *United States v. Kahn*, 415 U.S. 143, 155, 94 S.Ct. 977, 984, 39 L.Ed.2d 225 (1974): an individual must be identified in the wiretap application and subsequent court order "when the law enforcement authorities have probable cause to believe that that individual is 'committing the offense' for which the wiretap is sought." If federal agents have sufficient evidence to establish probable cause with respect to an individual, who will probably be intercepted by the wiretap, that individual must be identified, by name, in the application and order. If such specific identification does not occur, the application and orders are statutorily invalid and the evidence derived therefrom is inadmissible in a court of law. 18 U.S.C. § 2515.

Among Chiarizio's co-defendants was one Emil Sapere whose conversations were intercepted on the Chiarizio wiretap. Sapere was not mentioned in either the application for the court order or the court order itself. Chiarizio maintains that the FBI had sufficient evidence of a Sapere-Chiarizio connection to know of Sapere's illegal gambling activities at the time of the wiretap application and to realize the likelihood that Sapere would be intercepted on a Chiarizio wiretap. Chiarizio maintains that, given the government's probable cause to believe in the Chiarizio-Sapere connection, §§ 2518(1)(b)(iv) and 2518(4)(a) required that Sapere be identified, by name, as a "known" target of the wiretap. Since Sapere was not so identified, Chiarizio concludes, the application and order violated the statute under which they were issued and the wiretap evidence derived therefrom was inadmissible.

The government argues that its prior information with respect to a Chiarizio-

identity of the person, if known, committing the offense and whose communications are to be intercepted; . . .

18 U.S.C. § 2518(4)(a) reads as follows:

(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

Sapere connection was peripheral, and that, in any event, the agents who applied to Judge Blumenfeld for the Chiarizio court order were unaware of that little information which did point to a Sapere-Chiarizio connection. Hence, the government maintains, the agents applying for the order did not have probable cause to believe that Sapere would be intercepted on the Chiarizio wiretap. In the absence of such probable cause, it was unnecessary to name Sapere as a target in either the application or order.

Judge Blumenfeld, after two days of pretrial testimony, credited the government's witnesses and found that the government agents requesting the court order did not in fact possess sufficient information at the time of the application to establish probable cause with respect to defendant Sapere. He therefore held that the requirements of §§ 2518(1)(b)(iv) and 2518(4)(a) had been complied with and that the Chiarizio wiretap was legal and the evidence derived therefrom was admissible.

In light of Judge Blumenfeld's exhaustive discussion of this issue and his thoughtful analysis of the evidence raised by both sides, *Chiarizio, supra* at 867, we find it unnecessary to review all the details of the case. Judge Blumenfeld, who saw and heard the government agents at the pretrial hearing, credited their testimony as to their unawareness of that evidence which might have pointed to a Chiarizio-Sapere relationship.

Of course, we would be extremely concerned if it became a common practice for government agents to justify in retrospect the names omitted from wiretap applications on the ground that government agents had forgotten or ignored important evidence already in the government's possession. However, in the instant situation, there is no indica-

(a) the identity of the person, if known, whose communications are to be intercepted;

 * * * * * *

tion of such repeated abuses. Rather, in a single and isolated instance, a trial judge, after examining all the evidence and hearing all the witnesses, credited the testimony of the government agents and found that the facts of which they were aware did not establish probable cause with respect to Sapere at the time of the wiretap application.

■ Judge Blumenfeld's opinion, *Chiarizio, supra* at 867–74, thoroughly justifies his finding. We will not overturn such findings as to demeanor and credibility except when they are clearly erroneous. Wright, *Federal Practice and Procedure: Criminal* § 678 at 143. That is not the case here.

■ Accordingly, we reject this first claim of error and sustain the finding that the wiretap application and order were legal under the standards of 18 U.S.C. §§ 2518(1)(b)(iv) and 2518(4)(a). Since the government agents applying for the court order did not have probable cause to believe in Sapere's gambling link with Chiarizio, it was not necessary to name Sapere in the wiretap application and subsequent court order.

## II. THE TRANSCRIPTS

Chiarizio also claims that the district court erred in submitting to the jury government-prepared transcripts which purported to report the contents of tape recordings made of Chiarizio's wiretapped conversations. Chiarizio argues that the transcripts given to the jury did not reflect accurately the contents of the tapes. Accordingly, he concludes, the transcripts were inadmissible.

■ This court has explicitly held that the submission of a transcript from tape recordings is not permitted when one side objects to the content of the transcript as inaccurate. Before either tapes or transcripts are submitted to the jury, the judge should listen to the tapes and examine the transcripts *in camera*, receiving both sides' objections to the proposed evidence. *United States v. Bryant*, 480 F.2d 785 (2d Cir. 1973) at

789. In cases where the defense and prosecution disagree as to the contents of the tape, the proper procedure is for the jury to receive transcripts of both sides' versions. This was the procedure condoned in *United States v. Carson*, 464 F.2d 424 (1972) at 436–37, and specifically approved again in *Bryant, supra* at 791, n. 4.

It is undisputed that the *Carson-Bryant* procedure was not followed in the instant case: the defense did not submit its version of the tapes to the jury; Judge Blumenfeld did not listen to the tapes *in camera* so as to compare the contents of the tapes with the contents of the transcripts.

■ However, notwithstanding such noncompliance with the procedures outlined in *Bryant* and *Carson*, we do not reverse on this ground since, on the facts of this case, appellant Chiarizio failed to make his objections to the district court in a timely fashion. The district court record indicates that both the tapes and the transcripts were available to appellant Chiarizio for one year before his trial. (See trial transcript at 206–07). The appellant's allegation as to discrepancies between the tapes and the transcripts was not presented to Judge Blumenfeld until almost the day when the prosecution formally introduced the transcripts into evidence. Judge Blumenfeld, rather than suspending the trial to comply with the lengthy *in camera* procedures outlined in *Bryant* and *Carson*, ruled that under the circumstances Chiarizio had waived his right to object to the transcripts by his failure to make his objections earlier. We agree.

■ We, of course, do not sanction deliberate noncompliance with the requirements of *Bryant* and *Carson*. When, however, the defense has had the opportunity for one year to compare the government transcripts with the tapes, the defense may not wait until the last possible moment to file its objections to those transcripts. In the course of Chiarizio's lengthy suppression hearing, no objections were voiced as to the inau-

dibility or ambiguity of any of the tapes or the accuracy of the transcripts. Objections to tape transcripts, like objections to any other evidence, must be made in a timely fashion. 75 Am.Jur.2d Trial §§ 164–166. The requirement of timeliness is particularly important in a situation such as this since compliance with the *Bryant-Carson* procedure is likely to be quite time-consuming. If the defense can withhold its objections to the transcripts until the trial is well under way, it would be necessary to suspend the district court proceedings while the judge conducts a lengthy *in camera* comparison of the tapes and transcripts. Rather than condone such extensive disruptions, the law requires that objections be made when they first arise.

If either the transcripts or the tapes had been withheld from Chiarizio until the trial had begun, the situation would be a different one. When, however, a defendant has had a full year for comparisons and objections, he may not wait, as did Chiarizio, for the last moment to register his complaint.

Accordingly, we reject this second claim of error on the ground that appellant Chiarizio, by failing to raise his objections to the transcripts at an earlier time, effectively waived his right to object.[3]

### III. USE OF THE TRANSCRIPTS

Our decision with respect to the transcripts submitted to the jury in written form applies with equal force to Chiarizio's third claim of error. Chiarizio challenges the decision of the district court to allow an FBI agent to read verbatim on the witness stand from the government-prepared transcripts. Chiarizio did not present equivalent testimony.

3. The transcripts were never offered into evidence, a fact which Judge Blumenfeld mentioned quite forcefully in his charge to the jury. Moreover, the jury did hear copies of tapes of the intercepted conversations and was not forced to rely on the transcripts. Hence, we feel that adequate steps were taken to mitigate the effects of any noncompliance with *Bryant* and *Carson* which might have occurred.

While this procedure is arguably inconsistent with *Bryant* and *Carson*, which require that both sides be allowed to present their respective versions of disputed transcripts, Chiarizio's failure to raise his objections to the transcripts in a timely manner or to provide alternate versions controls. This is so whether the transcripts were read into the record from the witness stand or given to the jury in typewritten form.[4] Accordingly, we reject this claim of error.

### IV. THE IDENTIFICATION CARDS

Chiarizio also objects to the government's use of identification cards which, appended to the various transcripts, purportedly indicated the identity of the speakers in the recorded conversations. While the procedure was one which we do not necessarily approve, any error which resulted in the context of this case was harmless. The government presented witnesses who made voice identifications from the stand. Accordingly, written identification of those voices on the transcripts was, at most, harmless error.[5]

### V. ABATEMENT AND PARDON

The federal gambling statute under which Chiarizio was convicted, 18 U.S.C. § 1955, makes it a federal offense to violate a state law provision outlawing gambling. Only if a state anti-gambling law is violated is there criminal liability under the federal statute.

Chiarizio points out that the Connecticut anti-gambling statute mentioned in the federal grand jury indictment, Conn. Gen.Stat.Ann. § 53–295, has been repealed during the course of his prosecution. Therefore, he argues, the doctrine of abatement and pardon, which pre-

4. We note that, when the jury early in its deliberations called for the Chiarizo-White and Chiarizo-Johnson conversations, it rejected the suggestion that the transcripts be provided to it and listened instead to the tapes themselves.

5. The identification cards, like the transcripts, were never offered into evidence, a point emphasized by Judge Blumenfeld in his charge to the jury.

vents prosecution or entry of judgment under a law repealed since the initiation of the criminal proceedings, prevents his conviction.

This argument ignores the fact that § 53–295 was not simply repealed by the 1973 General Assembly, but was replaced by an updated statute incorporating essentially the same substantive offense. Conn.Gen.Stat.Ann. § 53–278a *et seq.* Section 53–295 was an old statute, the language of which had become quite archaic by 1973. Section 53–278a *et seq.*, its immediate successor, merely incorporates the same offenses in more modern language.

 The purpose of the abatement and pardon doctrine is to prevent the injustice manifest in continuing to prosecute a person for an activity after the legislature has declared that activity to be lawful. *Hamm v. Rock Hill*, 379 U.S. 306, 312, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964); *Bell v. Maryland*, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964). It would be far too mechanical an interpretation of the pardon and abatement doctrine to hold that a formal change in statutory provisions which leaves the substantive offense intact proscribes prosecution. Hence, this basis for appeal is rejected.

## VI. JURY PREJUDICE

Chiarizio also claims that the comments of one prospective juror on *voir dire*, to the effect that he knew Chiarizio, but not in the context of Chiarizio's "business," biased those jurors who heard the comment. In Chiarizio's view, the prospective juror's statement was understood by those who heard it to refer to Chiarizio's alleged gambling activities. Such comments assertedly prejudiced the jury by confirming Chiarizio's guilt before the trial started.

The government maintains (1) that the reference to Chiarizio's "business" was ambiguous and nonprejudicial because it may have been understood to refer to a legitimate profession and (2) even if the comment was understood as a reference to gambling, the district judge had wide discretion to screen the jury for bias and should not be overruled on the facts of this situation.

The government's position relies heavily on the decision of this court in *United States v. Colabella*, 448 F.2d 1299 (2d Cir. 1971). As we read *Colabella*, its relevance to this case is twofold. First, the court's decision in *Colabella* indicates that to show reversible prejudice, defendant must go beyond "speculation over thoughts or attitudes not manifest." *Colabella, supra* at 1302. Defendants must demonstrate more than a single ambiguous remark with potential for prejudice. Rather, they must demonstrate that prejudice in fact existed in the minds of the jury.

Secondly, before an appellate court will overturn the trial judge's discretion on *voir dire*, the defendant must show that the possibility of prejudice at the trial court was a substantial one, rather than an isolated minor incident. In *Colabella*, defendant claimed that the spectacle of several *voir dire* declarations of prejudice biased the veniremen who remained since they were exposed to a series of persons declaring their belief in the defendant's guilt. This court, while encouraging the practice of *in camera* questioning of jurors, declared that the facts of *Colabella* did not establish a case of juror bias.

 When one contrasts the single, ambiguous statement here with the quantum and directness of the *voir dire* statements of prejudice in *Colabella*, it is clear that defendant cannot prevail in the instant appeal. If the facts of *Colabella* were insufficient for reversal on the grounds of prejudice, a fortiori the more innocuous statement here is inadequate to overturn Chiarizio's conviction.

## VII. THE CHAIN OF CUSTODY

Chiarizio argues that certain evidence, stored by the FBI in its New Haven office, was inadmissible because of imperfections in the FBI's chain of custody. According to Chiarizio's theory, the con-

ditions under which the evidence was stored were unacceptable because some of the FBI's special agents could have gone into the storage room and tampered with the evidence. However, Chiarizio provides no concrete evidence of such tampering.

The evidence in question was kept in stapled envelopes which could be opened by an agent only if he signed for custody of the envelope. There is no evidence of unauthorized access to these envelopes or the evidence contained therein. Hence, we see no reason to credit Chiarizio's argument on this score. *United States v. Lavin*, 480 F.2d 657 (2 Cir. 1973).

### VIII. IDENTIFICATION OF CHIARIZIO'S VOICE

Finally, Chiarizo argues that it was reversible error for an FBI agent to identify from the witness stand a voice on the tape as Chiarizio's when the agent had never met Chiarizio or otherwise spoken with him personally. In defendant's view, this voice identification testimony was the expression of mere opinion. However, particular expert qualification is not required for voice identification. See *Davis v. United States*, 279 F.2d 576, 579 (4th Cir. 1960); *Palos v. United States*, 416 F.2d 438, 440 (5th Cir. 1969); *United States v. Rizzo*, 492 F.2d 443, 448 (1974). Moreover, it is undisputed that the agent in question had heard Chiarizio's voice exemplar. This undoubtedly provided a sufficient basis for the agent's identification testimony.

Accordingly, we deny this claim of error also.

The judgment of conviction is affirmed.