**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Barry RINN and Alex Selva,
Defendants-Appellants.**

No. 77–3339.

United States Court of Appeals,
Ninth Circuit.

Nov. 9, 1978.

Rehearing Denied Dec. 18, 1978.

Carl A. Capozzola, of Moore & Capozzola, Torrance, Cal., for defendants-appellants.

Theresa A. Kristovick, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ANDERSON and HUG, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

The defendants Rinn and Selva appeal their respective judgments of conviction and sentences to custody, fine and special parole for violations of the provisions of 21 U.S.C. § 846 (conspiracy), 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), and 18 U.S.C. § 2 (aiding and abetting).

Rinn and Selva were jointly indicted under a seven count indictment. A jury found Rinn guilty on four counts and Selva guilty on three counts.

We note jurisdiction and affirm.

*FACTS:*

The pertinent facts gleaned from the testimony of the informant Larry Neuberger are:

Neuberger met Rinn in New York during 1968. During that year, Neuberger moved to California and began trafficking in narcotics for Rinn. In 1969, he was convicted and sentenced to California penal custody for dangerous drug trafficking. After release in 1972, he borrowed $3,000 from Rinn and moved to Indiana. In 1976, he returned to Los Angeles where he rejoined Rinn and agreed to again enter drug trafficking for Rinn in order to clear the $3,000 indebtedness. Thereafter, on a number of occasions, he received narcotics for sale from Rinn and Selva. During one such transaction late in July, 1976, he agreed to sell cocaine to Detective John D. Abbey of the Downey, California Police Department, who was working in an undercover police capacity. Neuberger obtained cocaine from Rinn and Selva and sold two ounces thereof

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

to third parties and one ounce to Abbey for $1,600. Neuberger was arrested by Abbey late in July, 1976. Thereafter Neuberger agreed with Abbey to cooperate in the investigation of cocaine trafficking with the understanding that Abbey would do all he could to help Neuberger with his pending narcotics charge. Neuberger was released from custody and on September 3, 1976 he met with Rinn, at which time Neuberger was wearing a body radio transmitter. Neuberger and Rinn arranged for a sale of cocaine, with the pickup through the "stash" (the person holding the narcotics) Selva. The radio signals from Neuberger's body transmitter were tape recorded by police officers. Further meetings with Rinn for sales of cocaine were recorded on October 4 and 6, 1976. At the meeting on October 6, Abbey purchased cocaine from Rinn and Selva. Selva was subsequently arrested.

Abbey's testimony corroborated the testimony of Neuberger to the extent of his participation and established that throughout the investigation the Drug Enforcement Administration of the United States was cooperating with the Downey Police Department and had financed the investigation.

### PRETRIAL PROCEEDINGS IN THE DISTRICT COURT:

On July 26, 1977, the day scheduled for trial, the District Court held a pretrial hearing at the joint request of the Government and the Defense with respect to the Government's stated intention to introduce portions of the tape recorded conversations between Rinn and Neuberger. The Defense challenged the intelligibility of the tapes and the accuracy of the Government's prepared transcript thereof.

Defense counsel also requested a 30-day continuance on the grounds that they had not adequately reviewed the tapes because they had been informed by three different Assistant United States Attorneys who had handled the case that the tapes would not in fact be used at trial. The trial prosecutor did not inform the Defense of the Government's intention to utilize the tapes until the week before trial. Further, defense counsel claimed that they had not received a complete arrest record of the informant Neuberger nor any report of the promises or compensation he had received in exchange for his cooperation and testimony.

The District Court denied the motion for a continuance, noting that the case was a relatively old criminal matter and that defendants were in possession of Neuberger's arrest record. Additionally, the District Court ordered that prior to the time the informant was to testify, defendants were to be informed of any inducements Neuberger had received in exchange for his testimony.

With respect to the tape recorded conversations, the District Court found that the Defense had been apprised of the Government's intention to introduce them at trial by both the Government's trial memorandum as well as telephonic communication by the Government's trial prosecutor the week prior to the commencement of the trial. The District Court also found that the Defense had been in possession of the tapes for many months and had made no effort to analyze them.

The District Court also heard testimony from Abbey, who had conducted the surveillance operation involving the defendants and had prepared a written transcript of the tapes. Neuberger testified that he had listened to the tapes of the conversations in which he had participated and believed that the transcript accurately identified who was speaking. He identified the conversation attributed to him and to Rinn as accurate and said that he believed the tapes accurately reflected the conversations.

After carefully listening to the tapes, Judge Waters ruled that adequate foundation had been laid. The tape recordings were probative and intelligible, however often with some difficulty. Although one tape was partly unintelligible, the unintelligible portions were not sufficient to defeat its probative value as a whole. The District Court concluded that the tapes were admis-

sible and further stated that with respect to the transcripts, a cautionary instruction would be given to the jury as to the primary use of the tapes and that the transcripts would be removed from the jury upon completion of playing the tapes.

*ISSUES ON REVIEW:*

We construe the decisive issues on review to be:

1. Whether it was reversible error for the Government to fail to produce Abbey's handwritten notes used in preparing a transcript of the tape recordings.

2. Whether the District Court erred by placing the transcript of the tape recordings to the jury subject to a cautionary instruction that it was the tape recordings, not the transcript, which were controlling.

3. Whether the District Court erred in refusing to grant a continuance requested on the first day of trial.

4. Whether the District Court erred in permitting Detective Abbey to testify concerning certain statements made to him by Neuberger, who was available at trial and subject to cross-examination by the Defense.

5. Whether the Government's failure to disclose an inculpatory statement made by Selva prior to trial constituted reversible error.

*DISCUSSION:*

*Issue 1:*

It developed during the trial and before final cross-examination by defense counsel

that Abbey initially listened to the tapes and took rough, handwritten notes. It appears that the transcript of the tape recordings was prepared with the help of these notes. The transcript was compared with a playing of the tape recordings at the pretrial hearing. Rinn and Selva contend that failure to provide them with copies of the handwritten notes constitutes a violation of the Jencks Act (18 U.S.C. § 3500(b)), entitling them to a reversal of their convictions. They argue that the Government had been ordered to hand over such notes after Abbey testified and, further, that their failure to receive such information until the end of trial, after all testimony in the case had been given, prejudiced their right to confrontation and cross-examination of Abbey with respect to the accuracy of the transcript.

For the reasons later stated, we do not reach the issue of whether the rough handwritten notes made by Abbey upon listening to the tape recordings are "statements" within the purview of the Jencks Act as rationalized by *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976), and *United States v. Johnson*, 521 F.2d 1318 (9th Cir. 1975).

■ It is not clear from the record whether the Defense made proper demand for the handwritten notes as either Jencks Act material or Defense's belief of exculpatory material. Nevertheless it is crystal clear that the Government timely tendered the handwritten notes for the Defense's inspection and use during cross-examination.[1] For reasons known only to defense

---

1. During the presentation of the Government's case in chief, the following colloquy took place with respect to the Government's obligation, if any, to provide the defense with Abbey's rough, handwritten notes of the tapes:

"THE COURT: Do you see any reason why those [handwritten notes of Abbey], however, should not be turned over to [defense counsel] at this point, aside from the fact that there was a failure to make a proper motion?
PROSECUTOR: No, your Honor, I don't. I have no objection to his having those notes.
THE COURT: All right.

PROSECUTOR: I believe that I, in fact, have most of them in my possession here.
DEFENSE COUNSEL: Before we receive them, your Honor, I would like to have the officer testify that they are his full and complete notes.
THE COURT: All right. We can arrange that."
Later the following was adduced through defense counsel's cross-examination of Abbey:
"Q Do you have a copy of your handwritten notes that you made at the time that you first copies [*sic*] down those those tapes?
A Yes.

counsel, the tender was not accepted nor were the notes utilized by the Defense in further cross-examination. The Government could do no more. We believe no rule requires the Government to put Jencks Act or exculpatory materials into defense counsel's pocket after counsel declined to make use of what was tendered. We conclude this issue to be without merit.

*Issue 2:*

It appears that during the period between the date of the return of the indictment on or about October 27, 1976, and the date of trial, July 26, 1977, a succession of three Assistant United States Attorneys were consecutively in charge of the prosecution. Defense counsel was supplied with copies of the tape recordings in January of 1977. Thereafter each of the Assistant United States Attorneys, including the trial prosecutor, told defense counsel that the Government would not use the tape recordings as evidence. Thereafter and approximately a week before trial, the trial prosecutor orally and in writing advised defense counsel that it was the intention of the Government to offer the tape recordings into evidence. The Defense claims they had not prepared a transcript or thoroughly reviewed the tapes on the basis of a "gentlemen's agreement" with the prosecutor that the tapes would not be used at trial, and furthermore, that the numerous errors in the Government's prepared transcript and the inaudible nature of the tapes rendered the transcript and tapes untrustworthy and inadmissible.

> Q Are there any other handwritten notes on this case?
> A Yes, there are.
> Q Where are those other handwritten notes on this case?
> A I also have those sitting on counsel table. But I think you've got them, also.
> Q Handwritten notes?
> A Yes. On the case itself.
> Q What handwritten reports do you have other than the original notes that you took of those tapes?
> A I have handwritten notes of the surveillances, the telephone calls, all of which I have Xeroxed and provided to defense counsel."

Of interest is the following colloquy at instruction settlement time:

We are satisfied that the verbal exchanges among counsel to the effect that the tape recordings would not be used as evidence cannot be deemed to reach the level of an actual agreement binding on the Government, especially in light of the fact that defense counsel was informed a week before trial of the Government's intention to introduce the tapes in evidence. The Defense had been in possession of the tape recordings for approximately six months, and defense counsel admitted that he realized he did not have a promise from the Government not to use the tape recordings. *(Cf. United States v. Sweet,* 548 F.2d 198, 203–04 (7th Cir.), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977).)

The District Court at the pretrial conference, after listening very carefully to the tape recordings, ruled that despite some difficulties, it believed one could pick up and follow what was on them, and concluded that the tape recordings were admissible. The Court further concluded that the jury could utilize the Government prepared transcript under the cautionary instruction.

The Defense correctly contends that they never stipulated to the accuracy or admissibility of the Government's prepared transcript of the tape recordings. They further submit that in light of the discrepancies, confusion, and inaudible portions of the tapes, the admission of the transcript was prejudicial error.

The most recent Ninth Circuit pronouncement on this issue was in *United States v.*

> "DEFENSE COUNSEL: One last thing on this thing. I'm not going to make any motions at this time. It's a little late. But I never did receive those handwritten notes. I'd like for my own benefit to read them. I think you asked them to provide them to me and they were never provided.
> THE COURT: *They were never provided?*
> DEFENSE COUNSEL: No. And the copies of the photographs. I got them once, but I wanted copies of those things and I never got them either. *I don't know if you told him to give them to me or not."*
> (Emphasis added).

Turner, 528 F.2d 143 (9th Cir.), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), wherein this Court approved the admission of typewritten transcripts to assist the jury in following recordings while they were being played. In *Turner,* this Court stated that there could be no doubt that the transcripts were an accurate rendition of the contents of the tape recordings since the District Court had methodically reviewed many of the tape recordings and corresponding transcripts to ensure their conformity; had made appropriate corrections in the transcripts, including changes requested by the defense; and had given a cautionary instruction to the effect that only the recordings were evidence of the conversations and that the transcripts were provided merely to facilitate listening. Additionally, in *Turner* as in the present case, the Court granted the juror's request, after deliberations had begun, to have certain of the taped conversations replayed, following the same procedure as before and with the specific admonition that only the recordings, not the transcripts, were evidence of the conversations.

In the instant case, the District Court permitted the jury to consider both the tape recordings and transcript only after a careful review of the tape recordings' intelligibility and the transcript's accuracy. Specifically, the Court entertained objections by the Defense as to any alleged errors in the transcript, replayed challenged portions of the tape recordings and corrected the transcript where it appeared that certain relevant words were missing. Furthermore, the District Court clearly instructed the jury, immediately prior to playing the tape recordings, that the document placed before them was a transcription of a portion of what appeared on the tape recordings, and was to be used only as an aid in following the tapes themselves. The Court noted that sometimes the tape recordings were difficult to follow but admonished the jurors that if they followed carefully, with the use of the transcript, it thought they would be able to understand what was being said on the tape recordings and, further, that it was the tape recordings, not the transcript, which were controlling.

■ We are satisfied that in light of the rationale in *Turner,* the District Court did not commit reversible error in submitting the tape recordings and the Government's prepared transcripts thereof to the jury in the manner in which it was done. Our position is fortified by the testimony of Neuberger, a party to the conversations, corroborating the identity of the parties to and the substance of the conversations taped. Neuberger was subjected to a most searching cross-examination on the subject by the Defense.

The issue is without merit.[2]

*Issue 3* :

The three grounds in support of the defendants' motion for continuance were that the Government had failed to provide them with (1) copies of Neuberger's prior criminal record; (2) the enticements or promises made to him to secure his testimony; and (3) adequate notice that would allow them to analyze the tape recordings and transcript thereof.

■ We start with the truism that a motion for a continuance directs itself to the sound discretion of the trial court, and unless an abuse of discretion can be shown, an appellate court may not disturb the trial court's ruling. *United States v. Harris,* 501 F.2d 1 (9th Cir. 1974); *United States v. Bryan,* 534 F.2d 205 (9th Cir. 1976); *United States v. Pratt,* 531 F.2d 395 (9th Cir. 1976).

■ (1) It has been said that the Government has no discovery obligation under Fed. R.Crim.P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses. *United States*

---

2. The appellants rely upon *United States v. Bryant,* 480 F.2d 785 (2d Cir. 1973), and *United States v. Smith,* 537 F.2d 862 (6th Cir. 1976), which appear to support their claim of error; however, in each case the error was held to be harmless. The Defense merely urges that the error cannot be harmless. We believe the District Court in this case gave the appellants more safeguards than were given in *Bryant* or *Smith.*

*v. Taylor,* 542 F.2d 1023, 1026 (8th Cir. 1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). We, however, do not reach the issue in this case because it is manifest from the trial record before us that the entire criminal record of Neuberger was supplied by the Government and known to the Defense in adequate time to fully and extensively cross-examine Neuberger on the subject.

▋ (2) On July 26, 1977, the District Court ordered the Government to apprise the Defense in detail of any promises which had been made to Neuberger in exchange for his testimony. On July 27, 1977, in response to the District Court's inquiry, Government counsel stated that he had not had time to complete the task. The District Court instructed the Government to reduce the agreement to writing during the noon-time recess and to provide the defense with an accounting. Defense counsel fully utilized such accounting during the extensive cross-examination of Abbey on the following two days. We believe the Government complied with the requirements set forth by the United States Supreme Court in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), wherein it was held that nondisclosure of a promise of lenience to a key Government witness violated the due process clause. However, since information concerning "favor or deals" merely goes to the credibility of the witness, it need not be disclosed prior to the witness testifying. *United States v. Mitchell,* 372 F.Supp. 1239, 1257 (S.D.N.Y.1973). *See also United States v. Joseph,* 533 F.2d 282, 286–87 (5th Cir. 1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977); *accord, United States v. McGovern,* 499 F.2d 1140 (1st Cir. 1974).

(3) We are satisfied for the reasons adopted by the District Court at pretrial conference that the ground of inadequate notice of the Government's intention to use the recordings and transcripts has no merit.

We conclude the District Court exercised sound judicial discretion and did not otherwise err in denying the motion for continuance.

*Issue 4 :*

The Defense contends that they were prejudiced at trial by the admission of Neuberger's statements regarding the identity of his narcotics suppliers. Selva failed to object below.

Toward the end of the trial, the District Court made available to the defendants an investigative report prepared by Abbey on July 30, 1976, and upon request, Rinn's counsel was afforded the opportunity to recall Abbey and Neuberger.

Abbey was called as Rinn's witness and the following colloquy ensued:

"Q  Did you write a police report in which you indicated that he was able to obtain large quantities of cocaine from people?

A  Yes, I believe I did."

Cross-examination began immediately thereafter and Government counsel asked the following questions which were answered over the objections of Rinn's attorney:

"Q  Detective Abbey, referring to the references in this report to talking to his people, did he ever tell you who his people were?

A  Yes.

\*      \*      \*      \*      \*      \*

Q  Who did Larry Neuberger tell you his people were?

MR. CAPOZZOLA: That asks for hearsay, your Honor, and I object to it. It's rank hearsay.

THE COURT: Overruled.

THE WITNESS: His people were Barry Rinn and Alex Selva."

▋ It is manifest that the defense counsel opened the subject of Neuberger's prior statements to Abbey concerning the identity of his source of cocaine. To the extent that this subject was opened to impeach Neuberger's credibility, *i. e.,* syndicate sources of cocaine, the prosecutor's question about Neuberger's prior identification of the true source was proper rehabilitation.

Rule 801(d)(1) of the Federal Rules of Evidence provides in relevant part that:

"A statement is not hearsay if—

"(1) . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . ."

Furthermore this Court in *United States v. Parr-Pla,* 549 F.2d 660, 663 (9th Cir.), cert. denied, 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977), held in a similar context that:

"[Rinn's] counsel opened the door to admission of the full conversation by asking [Abbey on direct examination] whether [Neuberger] had made a particular statement in the course of the conversation. *See United States v. White,* 377 F.2d 908, 911 (4th Cir. 1967)."

We conclude that the District Court did not abuse its discretion or otherwise err in overruling the Defense objection to the receipt in evidence of Neuberger's prior identification by name of his cocaine source.

*Issue 5:*

The Defense contends that the Government's failure to inform them prior to trial of an inculpatory statement made by Selva to Neuberger, which was introduced at trial, constituted a violation of the discovery requirements of Fed.R.Crim.P. 16(a)(1)(A) and constituted reversible error.

The statement in question occurred during the course of the narcotics transaction on October 6, 1976, at which time Abbey, Neuberger, and Selva were present. Abbey had met Neuberger and Selva inside the Rochelle Motel and Bar, and Neuberger stated he had "four pieces" under the dashboard of his car. The three then proceeded out of the bar to the car. It was during this period, when Neuberger was retrieving the paper bag from under the dashboard of his car, that Abbey testified Neuberger looked up at Selva and inquired "Was this bag ripped when you gave it to me?" to which Selva uttered what the Defense now challenges as a previously unknown incriminating response.

Abbey did not testify as to Selva's allegedly incriminating response until nearly the close of the trial when he was called by the Defense. On cross-examination by Government counsel, Abbey was asked about the conversation he had heard between Neuberger and Selva outside Rochelle's Restaurant. Over Defense objections, Abbey was permitted to testify that when Neuberger asked, "Was the bag ripped when you gave it to me?" Selva stated, "No, I don't think so."

The pertinent portion of Fed.R.Crim.P. 16(a)(1)(A) provides:

"Upon request of a defendant the government shall permit the defendant to inspect and copy . . . the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent . . . ."

It is manifest from the evidentiary record that Selva at the time of his statement was unaware that either Neuberger or Abbey was in fact a Government agent. Furthermore, Selva was not then under "interrogation" within the meaning of Rule 16(a)(1)(A) by either Neuberger or Abbey.

■ We conclude that the District Court did not abuse its discretion or otherwise err in admitting into evidence Selva's reply.

The several judgments of conviction and sentences entered by the District Court on September 12, 1977 are each affirmed.

AFFIRMED.