## In re AUDIBILITY OF CERTAIN RECORDED CONVERSATIONS II.

### UNITED STATES of America

v.

### Victor Manuel GERENA, et al.

### Crim. No. H–85–50(TEC).

United States District Court,
D. Connecticut.

Aug. 15, 1991.

Richard N. Palmer, U.S. Atty., Carmen Espinosa Van Kirk, John A. Danaher, III, Leonard C. Boyle, Asst. U.S. Attys., Hartford, Conn.

Michael Deutsch, Chicago, Ill., for Orlando Gonzalez Claudio.

Ronald L. Kuby, New York City, for Luis Colon Osorio.

John R. Williams, New Haven, Conn., for Hilton Fernandez–Diamante.

Hal Meyerson, New York City, for Jorge Farinacci Garcia.

James L. Sultan, Rankin & Sultan, Boston, Mass., for Ivonne Melendez Carrion.

Margaret P. Levy, Hartford, Conn., for Angel Diaz Ruiz.

Richard Reeve, Asst. Federal Public Defender, New Haven, Conn., for Isaac Comacho Negron.

Richard J. Harvey, Stevens, Hinds & White, P.C., New York City, for Filiberto Ojeda Rios.

Michael O. Sheehan, Pittman, Sheehan, Solomon & Swaine, New Haven, Conn., for Elias Castro Ramos.

## RULING ON DEFENDANTS' OBJECTIONS TO ELECTRONIC SURVEILLANCE EVIDENCE ON GROUNDS OF AUDIBILITY

JOSÉ A. CABRANES, District Judge:

■ Pursuant to orders of July 19, 1991, and July 26, 1991, and with the consent of the parties, Judge T. Emmet Clarie referred to me the question of whether fifty-three conversations that were the subject of court-authorized electronic surveillance and recording are substantially audible and thus trustworthy and admissible.[1]

Three years ago, Judge Clarie referred to me the same question with respect to other electronic surveillance evidence. The meticulous—indeed, *overly*-meticulous—manner in which the admissibility of those recorded conversations was considered is explained in detail in *In re Audibility of Certain Recorded Conversations*, 691 F.Supp. 588 (D.Conn.1988) (*"Audibility"*), familiarity with which is assumed. In general, the same procedures were followed this time to maintain a clear chain of custody of the tapes in question, to safeguard the tapes while they were in my custody, and to return them to the custody of the Clerk in Hartford immediately after I had completed my review of the tapes. In this instance, I reviewed the challenged conversations during a period of eleven working days in late July and early August 1991 and returned the tapes to the custody of the Clerk on August 15, 1991. *See* Order Regarding Tapes, Transcripts, Etc. (filed Aug. 15, 1991); Appendix A to Order Regarding the Audibility of 53 "Levittown Residence" Conversations (filed Aug. 15, 1991) (Court's log); and Certificate of Deputy Clerk Roberta D. Tabora (filed Aug. 15, 1991), and the accompanying official log

---

1. *See* Recommended Ruling Regarding Interim Certification of Tapes to the Honorable José A. Cabranes (Eagan, M.J., approved by Clarie, J.) (filed July 19, 1991) and Amended Recommended Ruling Regarding Interim Certification of Tapes to the Honorable José A. Cabranes (Eagan, M.J., approved by Clarie, J.) (filed July 26, 1991). In the original referral order the presiding judge referred to me the tape recordings of conversations at a Levittown, Puerto Rico, residence and recordings of conversations from two different telephones in that town. In a letter of July 23, 1991, to me, the government reported the effective agreement of all concerned parties that my audibility review be limited to the Levittown *residence* tapes. All parties were afforded an opportunity to object or comment on this stipulation and none have done so as of this date. *See* Letter from Assist-

maintained by Deputy Clerk Tabora.[2]

As in the earlier review of recorded conversations in this case, I am today entering an order that, standing alone, is a full and adequate response to the referral to me by Judge Clarie. *Audibility* at 591. On this occasion, as in 1988, I have proceeded in a way that far exceeds any requirement of law or any reasonable expectations of disinterested observers. I have again made the substantive determinations of audibility without reference to transcripts—thus the negative response to each query on the use of transcripts or translations in Appendix A to the Order Regarding the Audibility of 53 "Levittown Residence" Conversations (filed Aug. 15, 1991) (Court's log). In making this determination of audibility without the use of transcripts, I do not suggest that it would have been inappropriate to use transcripts to make that determination; as it happens, I am persuaded that the use of transcripts would generally be entirely appropriate.

In any event, in a second stage of my efforts, I have again made use of the transcripts submitted by the parties, *see Audibility* at 600–01 & nn. 46–48, primarily those transcripts offered by the government, to be certain that I had in fact listened to the portions of the tapes the government intended to use and that the defendants challenged. In fact, I can report that each of the admissible conversations transcribed and offered by the government is indeed to be heard on the relevant tapes.

I used the following equipment provided by the government: a Revox B 77MK II Stereo Tape Recorder (# 169898) (for reel-to-reel tapes) and a Sony Stereo Cassette Deck TC-K555 (for cassette tapes). I relied on the meter numbers provided by the government. In my experience, the meter numbers provided by the government were generally at least 20–30 (sometimes many more) digits below the starting points on the conversations for which transcripts were provided. These discrepancies may reflect different methods of putting the tapes themselves on the player/recorder.

Although a determination of accuracy is arguably not necessary to the making of the determinations of audibility that have been referred to me, *see id.* at 601 n. 48, I can (and do) find that the Spanish-language transcripts submitted by the government for admissible conversations are highly accurate, despite the obvious difficulties presented from time to time by street noises, blaring radios, and other noisemakers.

■ As in 1988, I have "provide[d] ... a more detailed account than is necessary or (in most cases) appropriate," *id.* at 603; "[i]n other circumstances, neither law nor sound judicial practice would require or suggest that a judicial officer go [that] far." *Id.* It cannot be emphasized enough that "the fact that the evidence is in a language unknown to the presiding judicial officer [or the judicial officer making the determination of audibility] does not, and cannot, dictate *who* shall make the audibility determinations." *Id.* at 591. It is abundantly clear that, as Judge Clarie observed in June 1988, "there is absolutely no requirement that claims of inaudibility be reviewed by a district court judge fluent in the language intercepted on the tape." *Id.* at 591 & n. 7. The circumstances presented here—a vigorously-contested case now six years old for those defendants whose trials are now scheduled to begin in the fall of 1991 and my own ability and readiness to accept this referral—are "truly exceptional," *id.* at 591, and quite probably unique. It is merely a coincidence, of course, that a judicial officer born in Puerto Rico and fluent in the vernacular of its people is available to make these determinations of audibility.[3] In a land where

---

ant United States Attorney John A. Danaher, III, to Judge José A. Cabranes (dated July 23, 1991). Accordingly, by endorsement order I have approved the stipulation of the parties on this question. *See* Order (filed Aug. 15, 1991).

2. Because I considered these matters during breaks in my regular court schedule, it often happened that a particular tape remained on the tape player/recorder in my office for a period of time substantially in excess of the time that it would have taken to listen to a particular conversation if I had devoted my attention exclusively and without interruption to the tapes.

3. It is a matter of record that the parties have consented to the referral to me, and that they

English is the language of official proceedings and communications, and in which scores or hundreds of different languages are spoken by discrete groups within the larger English-speaking culture, there is no requirement—and, as a practical matter, there *should* be no requirement—that such decisions be made only by a judicial officer familiar with the language spoken by the persons whose conversations are recorded and presented as evidence. *See id.* at 591–92 & nn. 7–8; *see also id.* at 603 (on meaning of "admissibility" in this context).

In any event, having considered the admissibility of the 53 "Levittown residence" conversations under the applicable standards, *see United States v. Arango–Correa*, 851 F.2d 54, 58–59 (2d Cir.1988); *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir.1973), I have concluded, on the basis of the record before me, as follows: All of defendants' objections on grounds of inaudibility are overruled, with the exception of the objection to the conversation designated as Reel 13A (May 17, 1984), which objection is sustained as to all material from and including the penultimate line of page 9 of the Spanish-language transcript and overruled as to all other parts of that transcript. *See* Order Regarding the Audibility of 53 "Levittown Residence" Conversations (filed Aug. 15, 1991).

It is so ordered.

## ORDER REGARDING THE AUDIBILITY OF 53 "LEVITTOWN RESIDENCE" CONVERSATIONS

I have listened to the 53 "Levittown residence" conversations to which defendants object, *see* Recommended Ruling Regarding Interim Certification of Tapes to the

Honorable José A. Cabranes (Eagan, M.J., approved by Clarie, J.) (filed July 19, 1991) and Amended Recommended Ruling Regarding Interim Certification of Tapes to the Honorable José A. Cabranes (Eagan, M.J., approved by Clarie, J.) (filed July 26, 1991); Appendix A (Court's log) attached hereto; Notice of Disclosure (dated May 30, 1991); and Certificate of Deputy Clerk Roberta D. Tabora (filed Aug. 15, 1991) and the accompanying official log maintained by the Deputy Clerk, on grounds of inaudibility over a period of eleven working days in July and August 1991, considering their admissibility under the applicable standard of this Circuit. *See United States v. Arango–Correa*, 851 F.2d 54, 58–59 (2d Cir. 1988); *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir.1973). In accordance with that standard, and on the basis of the record before me, I conclude as follows: All of defendants' objections on grounds of inaudibility are overruled, with the exception of the objection to the conversation designated as Reel 13A (May 17, 1984), which objection is sustained as to all material from and including the penultimate line of page 9 of the Spanish-language transcript and overruled as to all other parts of that transcript. I find, on the basis of my review, that each of the government's Spanish-language transcripts for these conversations is a careful and exceptionally accurate rendering of the conversations that can be heard on these tapes. *See* Ruling on Defendants' Objection to Electronic Surveillance Evidence on Grounds of Audibility (filed Aug. 15, 1991); *see also In re Audibility of Certain Recorded Conversations*, 691 F.Supp. 588 (D.Conn.1988).

It is so ordered.

are familiar with my personal and professional background, including my service as special counsel to the Governor of Puerto Rico and head of the island's Washington office (1973–1975) and my writings on the island's political and constitutional development. Nevertheless, I take this opportunity formally to summarize my own "qualifications" for this particular effort: I was born in Puerto Rico and, though reared in New York City, I grew up in a family

in which Spanish was the language of the home and in which the Spanish-language press was read every day. In sum, I am familiar with the colloquial Spanish of Puerto Ricans on the island and in the continental United States, including the combination of Spanish and English sometimes spoken by persons whose conversations were recorded and are now proffered by the government.

APPENDIX A

SOURCE: __LEVITTOWN RESIDENCE__

| REEL # | COUNTER NUMBERS | REVIEWED BY COURT (Date) | TRANSLATIONS OR TRANSCRIPTS CONSULTED (Yes/No) | | CONVERSATION | |
|---|---|---|---|---|---|---|
| | | | Gov. | Def. | ADMISSIBLE | INADMISSIBLE |
| 3 | [214/482] | 7/23/91 | NO | NO | X | |
| 3 | [853/949] | 7/23/91 | NO | NO | X | |
| 3 | [1191/1530] | 7/23/91 | NO | NO | X | |
| 4 | [002/164] | 7/24/91 | NO | NO | X | |
| 4 | [730/839] | 7/24/91 | NO | NO | X | |
| 5 | [1255/1321] | 7/24/91 | NO | NO | X | |
| 5 | [1325/1355] | 7/24/91 | NO | NO | X | |
| 6 | [029/209] | 7/24/91 | NO | NO | X | |
| 6 | [1452/1507] | 7/24/91 | NO | NO | X | |
| 9 | [1285/1316] | 7/24/91 | NO | NO | X | |
| 12 | [001/067] | 7/24/91 | NO | NO | X | |
| 12 | [592/857] | 7/24/91 | NO | NO | X | |

SOURCE: <u>LEVITTOWN RESIDENCE</u>

| REEL # | COUNTER NUMBERS | REVIEWED BY COURT (Date) | TRANSLATIONS OR TRANSCRIPTS CONSULTED (Yes/No) | | CONVERSATION | |
|---|---|---|---|---|---|---|
| | | | Gov. | Def. | ADMISSIBLE | INADMISSIBLE |
| 12 | [935/964] | 7/24/91 | NO | NO | X | |
| 12 | [1184/1228] | 7/24/91 | NO | NO | X | |
| 12 | [1535/1560] | 7/24/91 | NO | NO | X | |
| 13 | [965/1061] | 7/24/91 | NO | NO | X | |
| 13A | [577/770] | 7/25/91 8/14/91 | NO NO | NO NO | X *In part. See text of order. | X *In part. See text of Order. |
| 14 | [804/1057] | 7/25/91 | NO | NO | X | |
| 16 | [331/364] | 7/25/91 | NO | NO | X | |
| 16 | [1355/1482] | 7/25/91 | NO | NO | X | |
| 17A | [1085/1124] | 7/25/91 | NO | NO | X | |
| 20 | [70/99] | 7/25/91 | NO | NO | X | |
| 20 | [1003/1103] | 7/25/91 | NO | NO | X | |
| 20 | [1117/1132] | 7/25/91 | NO | NO | X | |

SOURCE: LEVITTOWN RESIDENCE

| REEL # | COUNTER NUMBERS | REVIEWED BY COURT (Date) | TRANSLATIONS OR TRANSCRIPTS CONSULTED (Yes/No) | | CONVERSATION | |
|---|---|---|---|---|---|---|
| | | | Gov. | Def. | ADMISSIBLE | INADMISSIBLE |
| 20 | [1247/1267] | 7/26/91 | NO | NO | X | |
| XXXXXXXXXXXXXXXXXXXXXXXXX | | | | | | |
| 23 | [296/455] | 8/15/91 | NO | NO | X | |
| 28 | [1355/1491] | 7/26/91 | NO | NO | X | |
| 34 | [394/628] | 7/26/91 | NO | NO | X | |
| 35 | [741/921] | 8/7/91 | NO | NO | X | |
| 36 | [456/628] | 8/7/91 | NO | NO | X | |
| 40 | [211/236] | 8/7/91 | NO | NO | X | |
| 40 | [926/1373] | 8/7/91 | NO | NO | X | |
| 45 | [1406/1507] | 8/7/91 | NO | NO | X | |
| 46 | [353/944] | 8/7/91 | NO | NO | X | |
| 46 | [1008/1357] | 8/7/91 | NO | NO | X | |

SOURCE: LEVITTOWN RESIDENCE

| REEL # | COUNTER NUMBERS | REVIEWED BY COURT (Date) | TRANSLATIONS OR TRANSCRIPTS CONSULTED (Yes/No) | | CONVERSATION | |
|---|---|---|---|---|---|---|
| | | | Gov. | Def. | ADMISSIBLE | INADMISSIBLE |
| 48 | [163/1357] | 8/8/91 | NO | NO | X | |
| 52 | [627/805] | 8/8/91 | NO | NO | X | |
| 52 | [963/976] | 8/8/91 | NO | NO | X | |
| 53 | [30/38] | 8/8/91 | NO | NO | X | |
| 53 | [763/766] | 8/8/91 | NO | NO | X | |
| 66 | [679/756] | 8/8/91 | NO | NO | X | |
| 66 | [1057/1091] | 8/8/91 | NO | NO | X | |
| 72 | [1056/1092] | 8/9/91 | NO | NO | X | |
| 74 | [448/599] | 8/9/91 | NO | NO | X | |
| 74 | [1214/1607] | 8/9/91 | NO | NO | X | |
| 83 | [969/995] | 8/13/91 | NO | NO | X | |
| 86 | [024/269] | 8/12/91 | NO | NO | X | |
| 87 | [1621/1762] | 8/12/91 | NO | NO | X | |

SOURCE: LEVITTOWN RESIDENCE

| REEL # | COUNTER NUMBERS | REVIEWED BY COURT (Date) | TRANSLATIONS OR TRANSCRIPTS CONSULTED (Yes/No) | | CONVERSATION | |
|---|---|---|---|---|---|---|
| | | | Gov. | Def. | ADMISSIBLE | INADMISSIBLE |
| 89 | [1923/2273] | 8/12/91 | NO | NO | X | |
| 90 | [002/956] | 8/12/91 8/13/91 | NO | NO | X | |
| 95 | [553/1074] | 8/13/91 | NO | NO | X | |
| 96 | [303/336] | 8/14/91 | NO | NO | X | |
| 96 | [484/820] | 8/14/91 | NO | NO | X | |