**UNITED STATES of America, Appellee,**

v.

**Armando ARANGO–CORREA and Hernando Pulido, Defendants–Appellants.**

**Nos. 1123, 1124, Dockets 87–1522, 87–1523.**

United States Court of Appeals, Second Circuit.

Argued May 12, 1988.

Decided June 27, 1988.

Abraham Clott, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant Arango–Correa.

Lawrence V. Carra, Mineola, N.Y., for defendant-appellant Pulido.

David C. James, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. E.D.N.Y., John Gleeson, Asst. U.S. Atty., of counsel), for appellee.

Before VAN GRAAFEILAND, PIERCE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendants-appellants Armando Arango–Correa and Hernando Pulido appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York after a jury trial before Judge Dominick DiCarlo, United States Court of International Trade, sitting by designation. Defendants were convicted of importing, possessing with intent to distribute and conspiring to possess with intent to distribute over 500 pounds of cocaine, in violation of 21 U.S.C. §§ 952(a), 841(a), and 846, respectively. Defendant Arango–Correa was sentenced to three concurrent prison terms of 20 years, followed by two concurrent special parole terms of three years. Defendant Pulido was sentenced to three concurrent 15–year terms of imprisonment followed by two concurrent special parole terms of three years. Both defendants are currently serving their sentences.

On appeal, Arango–Correa and Pulido challenge the admission into evidence of certain items, including a tape recording of a conversation between defendants and notebooks found in Pulido's car. Both defendants also challenge as prejudicial the display before the jury of 500 pounds of cocaine. Defendant Arango–Correa separately contends that his consent to a warrantless search of his home was obtained in violation of his fourth amendment rights. For the reasons set forth below, we affirm the judgments of conviction as to both defendants.

## BACKGROUND

On April 29, 1986 upon the arrival of the ship *Simon Bolivar* into Brooklyn, New

York, an Inspector of the United States Customs Service noticed a flaw in one of 36 rolls of paper which formed part of a large shipment imported from Colombia, South America. Subsequent tests by Drug Enforcement Administration ("DEA") agents confirmed the presence of cocaine inside four of the 36 rolls. The paper, of the kind used to make grocery shopping bags, was consigned to a company called Interamerican Rapido Import and Export ("Interamerican Rapido"). The rolls of paper were ultimately found to contain 500 pounds of cocaine wrapped in 227 one-kilogram packages.

Agents of the DEA sought to identify the owner of the cargo by arranging a controlled delivery of the paper, rather than seizing the contraband at the pier. The government obtained a court order authorizing installation of a transmitter in one of the rolls of paper and another transmitter at a two-car garage in Queens, which was the address of Interamerican Rapido as indicated in the ship's manifest. During the course of visual surveillance of the garage, defendants Arango–Correa and Pulido were seen entering and leaving the garage, and both defendants were present to accept delivery of the rolls of paper on May 7, 1986. Audio surveillance of the garage resulted in recordings made on May 13, 1986 of Arango–Correa and Pulido inside the garage for a period of approximately two and one-half hours, speaking entirely in whispers. Although portions of the audiotape recorded during the surveillance were inaudible, parts of the conversation which could be heard contained apparent references to cocaine.

Defendants were arrested following audio surveillance of the garage. A Spanish-speaking agent gave Pulido his *Miranda* warnings. Pulido waived his constitutional rights and agreed to accompany the arresting agents to the garage and allow a search of the premises. An inspection of the garage revealed the 36 rolls of paper, plus 23 similar rolls from a prior shipment. Rolls 10, 11, 12 and 13, the four rolls identified at the pier as containing cocaine, were discovered hidden in a corner of the garage. Pulido was further questioned at the

United States Customs Service office at the World Trade Center. There, he gave the agents his consent to search his apartment.

The search of defendant Pulido's apartment produced several slips of paper bearing notations concerning drug transactions unrelated to the shipment of April 29. DEA agents also impounded Pulido's car pursuant to the forfeiture provisions of the Controlled Substances Act, 21 U.S.C. § 881. During a routine inventory search of the car, an agent uncovered two notebooks containing references to narcotics transactions also unrelated to the April 29 shipment from Colombia.

Defendant Arango–Correa was arrested at approximately 7:30 p.m. on May 13, 1986. He was read his *Miranda* warnings both in English and Spanish, and indicated that he understood his rights. He was brought to the United States Customs Service office at the World Trade Center. There he was strip searched, although he was not subjected to a body-cavity search. He again was advised of his rights in Spanish and again stated that he understood them. He agreed to answer the agents' questions; he was not handcuffed, no weapons were drawn, and the agents spoke in normal tones of voice.

After approximately ten minutes of questioning, Arango–Correa complained of stomach pains and said that he was sleepy. He was allowed to lie down for several hours on a couch in a darkened office. After further questioning by the agents he again complained of stomach pains. The questioning ceased, and he was allowed once more to lie down. At 12:30 a.m., the agents asked Arango–Correa for consent to search his apartment. The agents explained to him that they did not have the right to search without a warrant, that he had the right to refuse consent, and that any evidence discovered during the search could be used against him. Arango–Correa stated that he understood these rights and executed a consent form in Spanish. The consent form acknowledged that he had been advised of his rights and that he was not under any pressure or force to give his consent.

In the search of Arango–Correa's apartment, DEA agents found several slips of paper bearing references to drug transactions. Some of the notations corresponded to weights and markings on packages of cocaine which were part of the April 29 shipment.

At a suppression hearing before trial, the district court considered the admissibility of the audiotapes recorded during surveillance of the garage. The court also considered admission of the notations uncovered in the search of Arango–Correa's apartment, notebooks taken from Pulido's car during the DEA's inventory search, and notes found in Pulido's apartment. Based upon findings made at the hearing, the district court denied defendants' motions to suppress this evidence. At trial, the district court permitted the display, over defendants' objection, of 500 pounds of cocaine seized from the garage. Defendants were found guilty on each count of the indictment and were sentenced.

## DISCUSSION

### I. *Voluntariness of Consent to Search.*

In support of his contention that evidence uncovered during the search of his apartment should have been suppressed, Arango–Correa argues that his consent was vitiated by the fact that he was in custody for five hours before he consented to the search. Arango–Correa further contends that he was subjected to subtle but intense coercion because he was strip-searched and questioned by DEA agents while in custody.

The government is required to demonstrate that "consent [to search] was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973); *see United States v. Ceballos,* 812 F.2d 42, 49 (2d Cir.1987). The test of voluntariness is whether the consent was the product of an essentially free and unconstrained choice by its maker, *Schneckloth,* 412 U.S. at 225, 93 S.Ct. at 2046, and is a question of fact to be determined from all of the surrounding circumstances. *Id.* at

248–49, 93 S.Ct. at 2059. The district court's factual finding that Arango–Correa's consent was voluntarily given, therefore, will not be set aside by this Court unless it was clearly erroneous. *United States v. Puglisi,* 790 F.2d 240, 244 (2d Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).

■ The district court's finding that Arango–Correa voluntarily consented to the search of his apartment is amply supported by the record. The district court undertook a thorough inquiry of the circumstances surrounding Arango–Correa's consent as required by *Schneckloth.* The fact that Arango–Correa was in custody for five hours did not compel a finding that his consent was involuntary. To the extent that Arango–Correa urges us to hold that a five-hour detention renders a consent to search involuntary *per se,* we specifically decline to do so.

Defendant was well treated while in custody and was not subjected to the kind of intensive interrogation over many hours or days which would overwhelm the frightened prisoner and vitiate consent. *Compare Stawicki v. Israel,* 778 F.2d 380, 383 (7th Cir.1985) (5½ hour detention including 1½ hour interrogation did not render confession involuntary), *cert. denied,* 479 U.S. 842, 107 S.Ct. 150, 93 L.Ed.2d 91 (1986) *and Shriner v. Wainwright,* 715 F.2d 1452, 1455 (11th Cir.1983) (10-hour detention including five-hour interrogation did not render confession involuntary), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984) *and United States v. Busic,* 592 F.2d 13, 22 (2d Cir.1978) (despite weariness due to long flight and little sleep, written consent was not involuntarily given) *with Miranda v. Arizona,* 384 U.S. 436, 495, 86 S.Ct. 1602, 1638, 16 L.Ed.2d 694 (1966) (14-hour custody with lengthy interrogations by FBI and local police rendered confession involuntary), *rev'g Westover v. United States,* 342 F.2d 684 (9th Cir.1965) *and Miranda,* 384 U.S. at 499, 86 S.Ct. at 1640 (detention for five days including nine interrogations rendered confession involuntary), *aff'g People v. Stew-*

*art,* 62 Cal.2d 571, 43 Cal.Rptr. 210, 400 P.2d 97 (1965).

On this record, the district court's finding that defendant "did not appear to be in such [ ] discomfort that his condition was affecting his ability to give a knowing and willing consent" was not clearly erroneous.

## II. *Display of Cocaine to Jury.*

■ Both defendants argue that the prejudicial impact of the cocaine display outweighed its probative value because they were willing to stipulate to the quantity, purity and manner of packaging of the cocaine seized. While defendants concede, as they must, that the district court is provided broad discretion under Fed.R. Evid. 403 regarding the admissibility of relevant evidence, *see Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir.1988); *United States v. Robinson,* 560 F.2d 507, 514 (2d Cir.1977) (in banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978), they nevertheless contend that the district court abused its discretion in allowing the cocaine display.

To find an abuse of discretion, defendants must show that the trial court acted "arbitrarily or irrationally." *United States v. Birney,* 686 F.2d 102, 106 (2d Cir.1982) (citation omitted). This is a difficult burden to meet. Defendants' burden is made more onerous by the fact that we "must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Jamil,* 707 F.2d 638, 642 (2d Cir.1983) (quoting *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979)). While defendants' argument has some superficial appeal in that evidence of narcotics transactions may give rise to a danger of unfair prejudice, *see United States v. Pedroza,* 750 F.2d 187, 201 (2d Cir.1984), *cert. denied,* 479 U.S. 842, 107 S.Ct. 151, 93 L.Ed.2d 92 (1986), in this case the district court's decision to allow the display of cocaine before the jury was far from erroneous. The 500 pounds of cocaine was the principal physical evidence in the case. Moreover the court was careful to limit the duration of the display, thereby minimizing the prejudicial impact of the large quantity of cocaine.

## III. *Admission of Sound Recordings.*

Defendants also contend that the district court abused its discretion in denying their motion to suppress the audiotape recorded during surveillance of the garage. Defendants cite the fact that the recordings had several inaudible and unintelligible passages. They reason that the jury must have been forced impermissibly to speculate as to the meaning of the conversations recorded.

■ The mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape. "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge." *United States v. Bryant,* 480 F.2d 785, 790 (2d Cir.1973) (quoting *Monroe v. United States,* 234 F.2d 49, 55 (D.C.Cir.), *cert. denied,* 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956)); *United States v. Maxwell,* 383 F.2d 437, 442 (2d Cir.1967), *cert. denied,* 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968).

Our decisions in this area reveal a clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative. *See Bryant,* 480 F.2d at 790; *see also United States v. Chiarizio,* 525 F.2d 289, 293–94 (2d Cir.1975); *United States v. Carson,* 464 F.2d 424, 436–37 (2d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Warren,* 453 F.2d 738, 743 (2d Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed. 2d 331 (1972); *United States v. Weiser,* 428 F.2d 932, 937 (2d Cir.1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *Maxwell,* 383 F.2d at 442.

■ In determining the admissibility of the tape recording, the district court correctly focused on the probative nature of

the tapes, and not merely their audibility. The jury was entitled to draw reasonable inferences from defendants' whispering to each other during the two and one-half hours spent in the garage. Moreover, relying on its own reading of transcripts of the recording, the district court concluded that the transcript, even with the inaudible portions marked in, was sufficiently clear that the jury could "come to some conclusion as to what was going on down there, namely a very thorough, at least, examination of rolls of paper." On the basis of this record we are satisfied that the district court did not err in finding the tapes to be sufficiently probative to be admitted.

### IV. Admission of Drug Records Recovered from Vehicle and Apartment.

Defendant Pulido advances three arguments in support of his contention that the district court erred in admitting narcotics records recovered in a search of his car and apartment. First, although he concedes that the government had an absolute right to seize the vehicle pursuant to the forfeiture provisions of 21 U.S.C. § 881(a), and thereafter to conduct an inventory search of the car, Pulido argues that the government exceeded the proper scope of an inventory search when DEA agents opened and perused the contents of two notebooks found in the car. Second, Pulido argues that the government failed to lay a proper foundation for admission into evidence of documents found in his apartment because it failed to attribute the documents to him. Finally, defendant argues that notations concerning narcotics transactions going back to 1983, three years prior to the incident which formed the basis of the indictment, were too remote in time to be relevant to the current offense.

■ Each of Pulido's arguments is without merit. An inventory search pursuant to standardized procedures will be upheld unless there is a showing that the government acted in bad faith or searched the car for the sole purpose of investigation. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364,

373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976); *Cooper v. California*, 386 U.S. 58, 61–62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). The district court credited the testimony of Agent Anderson who acknowledged that inventory searches are "standard procedure after a car is seized" pursuant to the forfeiture statute, and that such searches are routinely undertaken "[t]o make sure there is no other contraband or weapons or evidence, anything left in the car before it [is] placed into storage." Beyond defendant's bare allegation that the inventory search was a pretext to make an investigatory search, there is no showing that the car was searched for any purpose other than to secure the car and its contents prior to storage.

■ Furthermore, Pulido's contention that agents exceeded the permissible scope of the inventory search when they opened two notebooks, which defendant likens to closed containers, cannot stand in light of *Bertine*, 479 U.S. at 374, 107 S.Ct. at 743 (no requirement that police weigh privacy interests of defendant before inventory of closed container found in car), and *Illinois v. Lafayette*, 462 U.S. 640, 648, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983) (search incident to arrest allows police to search any container or article in arrestee's possession). It was not an abuse of discretion, therefore, for the district court to admit the results of the inventory search of Pulido's car.

■ Nor was it an abuse of discretion to admit the results of the vehicle and apartment searches against defendant Pulido. Under Fed.R.Evid. 404(b), evidence of similar acts is admissible for such purposes as "proof of motive, opportunity, intent, preparation, plan [or] knowledge." The district court will admit similar act evidence "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, — U.S. —, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The government showed that the notations were found in Pulido's apartment and car. One of the records was written on the back of a deposit slip bearing Pulido's name and

**60**

signature on the front. Some of the same names appeared on both the narcotics records found in Pulido's car and his apartment. It is obvious that there was sufficient evidence to support a finding by the jury that the drug notations were connected to Pulido.

Evidence of similar acts is properly admitted if its probative value is not outweighed by the danger of unfair prejudice, Fed.R.Evid. 403, and the district court bears the responsibility of making this determination. *United States v. Gaggi*, 811 F.2d 47, 60 (2d Cir.), *cert. denied*, 107 S.Ct. 3214 (1987) & *cert. denied* — U.S. —, 107 S.Ct. 3233, 97 L.Ed.2d 739 (1987). To meet Pulido's defense that he was merely on hand to assist Arango–Correa in receiving a shipment of paper and that he had no knowledge of the true nature of the shipment, the government's offer of proof that Pulido was familiar with narcotics transactions was clearly relevant and probative. *See United States v. Martino*, 759 F.2d 998, 1005 (2d Cir.1985) (defense of "mere presence" entitled government to offer proof of knowledge of narcotics transactions with 11–year old conviction for narcotics offense). We note that the district court was careful to give limiting instructions confining the offer of proof to the issue of Pulido's knowledge of narcotics transactions in general, thereby minimizing the danger that the jury would connect those documents to Arango–Correa or to the April 29 shipment of cocaine. Having undertaken a conscientious evaluation of the potential for unfair prejudice, the district court's determination that the evidence was admissible is entitled to deference and will not be disturbed.

## CONCLUSION

Having found the defendants' various contentions to be without merit, defendants' convictions are affirmed.