**UNITED STATES of America**

**v.**

**Navin SHETH, Rafael Cohen a/k/a "George," and David Darai, Defendants.**

**No. 91 Cr. 679 (MBM).**

United States District Court, S.D. New York.

Jan. 31, 1992.

Sharon L. Davies, Asst. U.S. Atty., New York City, for U.S.

Andrew G. Patel, New York City, for defendant Navin Sheth.

Barry H. Berke, Federal Defender Services Unit, New York City, for defendant David Darai.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant Navin Sheth has moved to suppress statements he made following his arrest on August 4, 1991 for possession and distribution of hashish concealed within several diesel engine water pumps imported from India. Defendant David Darai has moved to suppress items seized from his car following its seizure on August 4, including a circular grinding saw, a box of carbide blades, a chisel, stacks of large empty cardboard boxes and numerous rolls of packing tape. The saw, blades and chisel allegedly were to be used to cut open the pumps; the boxes and tape apparently were for packing the hashish. For the reasons set forth below, the motions are denied.

### I.

The thrust of Sheth's motion is that he was not properly advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because he does not speak English, but rath-

er Gujarat, an Indian dialect. However, testimony at a hearing on December 24, 1991 established that Sheth responded without hesitation to the warnings, and disclosed in English that he knew there were drugs in the pumps and that the drugs were hashish. Subsequently, at DEA headquarters, Sheth answered in English questions asked in English about his personal history. Based on that evidence, it appears that Sheth understands enough English to have knowingly waived his *Miranda* rights by responding to questions. I find that he did, and his suppression motion must be denied.

## II.

■ Darai's motion is based on a claim that the DEA agents had no basis to seize his car, a 1978 Oldsmobile, both because they had no basis to believe it was used in connection with a drug transaction and because the car did not meet DEA valuation guidelines for seizure of automobiles. Alternatively, Darai argues that the valuation regulations, which show that seizure is the rule but create an exception for vehicles valued at less than $2500, confer on DEA agents impermissible discretion in deciding which cars to seize.

The relevant statute is 21 U.S.C. § 881(a)(4), which provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(4) All conveyances, including ... vehicles, ... which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances].

Pursuant to that statute, agents may seize a vehicle to effect forfeiture once they have probable cause to believe that the vehicle was used to facilitate a drug transaction. *See United States v. Arango–Correa*, 851 F.2d 54, 59 (2d Cir.1988).

The evidence at the hearing showed that codefendant Rafael Cohen had driven with Darai in the car on several occasions to meetings at which electronic surveillance disclosed Cohen was negotiating with Sheth about importing the hashish. (Tr. 41) That evidence was enough to show that the vehicle was used to "facilitate the ... receipt" of a controlled substance.

When Darai appeared with the other defendants at the warehouse where the pumps were stored, he was arrested. His car, parked near the loading dock of the warehouse alongside a van apparently to be used to transport the pumps, was seized. (Tr. 31)

Darai relies principally on *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), which holds simply that law enforcement agencies must place some limit on and guidance for the discretion of police officers conducting inventory searches:

Our view that standardized criteria, or routine, must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime."

110 S.Ct. at 1635 (citations omitted) (quoting *Colorado v. Bertine*, 479 U.S. 367, 376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987) (Blackmun, J., concurring)). But when the Court said it was "forbidding uncanalized discretion to police officers conducting inventory searches," *id.*, it did not speak of standards for effecting seizures. Congress did all the speaking necessary on that subject when it declared in the statute that vehicles used to facilitate drug transactions are subject to forfeiture "and no property right shall exist in them." The statute contains no exception for jalopies. Whatever standards DEA adopted for its own administrative convenience in deciding which cars its agents should seize do not create substantive rights in favor of Darai. *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir.) (citing cases), *cert. de-*

**918**

*nied,* —— U.S. ——, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990).

The agent who testified at the hearing said he had been directed by his superior moments after Darai's arrest to seize the car. (Tr. 31, 76–77) He testified also that a book DEA uses to value vehicles showed the vehicle in question was valued at $3025 (Tr. 61–62), the valuation figure placed on the inventory form and one I find surprising when applied to a 1978 Oldsmobile with more than 83,000 miles on it, as Darai's car apparently was. (GX 3) Nonetheless, pursuant to the statute Darai had no privacy interest in the car itself once there was probable cause to believe he had used it to facilitate a narcotics transaction, as there was when it was seized. Even if the DEA regulation in question conferred "uncanalized discretion," *Wells, supra,* on agents to seize any vehicle used to facilitate a narcotics transaction, it would be difficult to view such a regulation as threatening Fourth Amendment rights when those rights protect only places and things in which people retain a privacy interest, and Darai had no privacy interest in the vehicle itself once it became subject to seizure.

To be sure, under *Wells* and its progenitors, Darai did retain a privacy interest in the contents of the vehicle, which were not necessarily subject to seizure simply because the vehicle was. Therefore, Darai had a privacy interest in the manner in which the inventory search was carried out. However, I do not understand Darai to have taken issue with the manner of the search or with the regulations directing how it was to be carried out. In particular, he does not dispute that an inventory search of a vehicle may include opening the trunk. Once the trunk was opened, the evidentiary character of the blades and other paraphernalia was obvious and they became subject to seizure based on probable cause.

For the above reasons, the motions by both defendants are denied.

SO ORDERED.