UNITED STATES of America,

v.

Jeffrey FLORES, a/k/a "Jeffrey Rodri-
guez," a/k/a "Yamo," a/k/a "Green
Eyes," et al., Defendant.

No. 99 CR. 1110 RWS.

United States District Court,
S.D. New York.

Nov. 29, 2000.

Honorable Mary Jo White, United States Attorney for the Southern District of New York, New York (Edward C. O'Callaghan, Assistant U.S. Attorney, Of Counsel), for United States of America.

Maurice H. Sercarz, New York City, for Defendant.

### OPINION

SWEET, District Judge.

The Government has moved for reconsideration of this Court's October 27, 2000 opinion granting the motion of defendant Jeffrey Flores ("Flores") to suppress evidence seized in a search of his vehicle. Upon reconsideration, the photograph was properly seized, but calendar book and cellular telephone will be suppressed.

#### Prior proceedings

The prior proceedings in this action are set forth in a prior opinion, No. 99 Cr. 1110(RWS), 2000 WL 1597880 (S.D.N.Y. Oct. 27, 2000), familiarity with which is assumed. Briefly, the motion to suppress was granted due to the fact that no evidence had been presented regarding either the existence of any inventory procedure by the Drug Enforcement Agency ("DEA") or whether such policy was fol-lowed in the search of Flores's vehicle in this case.

#### Discussion

The Government seeks (1) consideration of affidavit evidence regarding DEA policies on inventory searches, and (2) reconsideration of the motion to suppress in light of the new evidence.

#### I. Additional Evidence

The Government contends that at the October 11, 2000 hearing on the motion to suppress, the parties were granted leave to submit additional materials, and that the October 27, 2000 opinion was issued before they had an opportunity to do so. The defense does not oppose this aspect of the Government's motion, but argues that the suppression should stand even in light of the proffered evidence. Because no schedule was set for the filing of additional materials, the proffered evidence will be considered and is deemed to be true.

DEA Special Agent Kenneth Ludowig, one of the agents who arrested Flores and conducted the contested search, has submitted an affidavit setting forth the DEA's inventory search policy and the procedures that were followed during the search of Flores's vehicle. *See* Ludowig Aff. & Exs. According to the uncontested evidence presented by Ludowig, standard DEA procedure requires agents to take custody of, impound, and conduct an inventory search of any vehicle that will be in DEA custody for any period of time after the sole occupant is arrested. *Id.* at ¶¶ 3–4. The items catalogued in any inventory search must be recorded on a DEA Form 6, the "Report of Investigation Form," a DEA Form 7a, "Acquisition of Non–Drug Property and Regulatory Seizures" Form, or a DEA Form 12, "Receipt for Seized Property." *Id.* at ¶¶ 5–7. The purposes of the inventory search policy include the need "to protect an owner's property while it is in DEA custody, to insure against claims of lost, stolen, or vandalized property, and to protect agents from danger." *Id.* at ¶ 4.

After Flores was arrested, Ludowig searched his person, yielding a pager, wallet, car keys, currency, identification cards, and various personal items. *Id.* at ¶ 10. Section 6641.23 of the DEA Agents Manual requires that all containers, including vehicles, "must be thoroughly examined to inventory their contents." *Id.* at ¶ 11. Agent Ludowig first conducted a cursory inventory search of the car, during which he recovered a cellphone, photograph, calendar book and items related to employment for Federal Express. *Id.* Then, because he was aware that a cooperating witness had told agents that Flores was known to keep a gun trap in the vehicle, Ludowig undertook a more thorough inventory search for weapons some time after the car had been transported to DEA offices in Fort Lauderdale. *Id.* at ¶¶ 12–13.

Ludowig and other agents assessed which items had "possible evidentiary value," separated them from personal items, and recorded all of them on the appropriate forms. *Id.* at ¶¶ 14, 15. Mrs. Blake–Rodriguez signed a Form 12 when she accepted receipt of the items Ludowig had ascertained to be "purely personal" on the day of the arrest. *Id.* at ¶ 15. Agent Ludowig again recorded his inventory of same items, as well as those items that had been retained as non-drug evidence in a DEA Form 6, DEA Form 6 Report of Investigation, and DEA Form 7a, on October 25, 1999. *Id.* at ¶¶ 16–18, Exs. A–C.

## II.  *Analysis of Inventory Search*

The Government contends that the aforementioned evidence suffices to show both that the DEA has a standardized inventory search policy, and that those procedures were in fact followed in this case. In the alternative, the Government seeks to limit the evidence suppressed to those items seized from the vehicle that were held for evidentiary value, namely the cellular phone, calendar book and photograph.

The defense contends that the suppression should stand because (1) the new evidence still fails to prove that the search was not pretextual; and (2) the additional search of the calendar book, cellular phone and photograph once they were seized exceeded the scope of a lawful inventory search.

Warrantless inventory searches may be conducted in order to (1) protect the owner's property while the vehicle is in police custody; (2) protect the police against claims of lost or stolen property; or (3) protect the police from potential danger. *See Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). For an inventory search to be lawful, the search must be conducted pursuant to standardized procedures. *See Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *United States v. Griffiths,* 47 F.3d 74, 78 (2d Cir.1995).

An inventory search policy comports with the requirements set forth by the Supreme Court as long as it does not allow so much latitude that the inventory search becomes an "excuse for general rummaging." *Wells,* 495 U.S. at 3, 110 S.Ct. 1632. The Government has now submitted evidence of a standard DEA policy requiring that "all containers, including vehicles, 'must be thoroughly examined to inventory their contents.'" Ludowig Aff. at ¶ 11 (citing DEA Agents Manual § 6641.23). The photograph was seized from the vehicle pursuant to this policy. The face of the photograph clearly displayed its subject matter, and no additional search was required to ascertain its evidentiary value. The photograph therefore should not have been suppressed.

The question therefore becomes whether the calendar book and cellular telephone were "containers" that must be opened to "inventory" their "contents"

within the meaning of the DEA policy. In other words, did the agents overstep the bounds of a lawful inventory search by conducting a second examination of these items for the sole purpose of investigating their possible evidentiary value? No evidence probative of whether DEA policy authorizes agents to open datebooks and read their entries or to search a cellular telephone for numbers and recorded messages has been presented from the DEA policy itself, other than the single sentence description provided by Agent Ludowig. This inquiry is therefore guided by reference to the generally approved safekeeping goals of inventory searches. *See Bertine,* 479 U.S. at 374, 107 S.Ct. 738; *Opperman,* 428 U.S. at 375, 96 S.Ct. 3092 (emphasizing standardized procedures as means of limiting scope of inventory search to extent necessary to perform "caretaking function").

First, there is no evidence that DEA policy regarding the opening of "containers to inventory their contents" includes items that do not "contain" any physical evidence. Therefore, absent any evidence of the definition of "container" in the DEA policy, neither a calendar book nor a cellular telephone is a "container" that has "contents" that need to be inventoried for safekeeping in the traditional sense of those terms. *See United States v. Chan,* 830 F.Supp. 531, 534 (N.D.Cal.1993) (analogizing contents of "electronic repository of personal data" to address book and suppressing evidence gained by warrantless activation of pager due to violation of owner's privacy interest) (*citing United States v. Nelson Blas,* No. 90–CR–162, 1990 WL 265179 (E.D.Wis.1990)); *cf. Wells,* 495 U.S. at 4, 110 S.Ct. 1632 (permitting discretion in opening locked suitcase and garbage bag due to inventory search purpose of protecting property); *Bertine,* 479 U.S. at 369, 373 & n. 5, 107 S.Ct. 738 (finding that backpack inside van may be opened in order to ascertain whether it contained dangerous or valuable items); *Gudema v. Nassau County,* 163 F.3d 717, 717 (2d Cir.1998) (shield case

containing other physical items may be opened for inventory); *United States v. Griffiths,* 47 F.3d 74, 76 (2d Cir.1995) (search of opened and reglued orange juice container within duffel bag); *United States v. Thompson,* 29 F.3d 62, 64 (2d Cir.1994) (locked suitcase).

Yet in *United States v. Arango–Correa,* 851 F.2d 54 (2d Cir.1988), the Second Circuit affirmed the admission of information regarding drug-dealing that agents discovered after opening two notebooks during an inventory search of a defendant's vehicle. The Government contends that *Arango–Correa* is dispositive of the question presented here. However, it was the defendant-appellant, not the Government, who asserted that the notebook was analogous to a "container" in *Arango–Correa.* In a single sentence, the Court held that the defendant-appellant's "contention that agents exceeded the permissible scope of the inventory search when they opened two notebooks, which defendant likens to closed containers, cannot stand in light of Bertine." *Id.,* 851 F.2d at 59. *Bertine* was then parenthetically cited for the proposition that police need not weigh a defendant's privacy interests before inventorying a closed container found in a vehicle. *Id.* However, the countervailing interest in *Bertine* was the officials' goal in safeguarding the property inside the container due to "the possibility that the container might serve as a repository for dangerous or valuable items," 479 U.S. at 374, 107 S.Ct. 738, rather than the possibility of discovering information for later evidentiary use.

■ Here, Agent Ludowig merely inventoried the items in question during his "cursory" initial search of the vehicle and subsequently conducted a more thorough search of the seized items to assess which of them had evidentiary value, assisted by other agents. Ludowig Aff. at ¶¶ 11, 14. It is the second search that raises constitutional difficulties. *See United States v. O'Razvi,* No. 97 Cr. 1250(DLC), 1998 WL

405048, *6 (S.D.N.Y. July 17, 1998) (noting that search of computer disk's contents conducted subsequently to inventory cannot be justified as an inventory search). Whereas the evidentiary nature of the drug record notebooks in *Arango–Correa* must have been readily apparent upon cursory examination, the agents in this case admittedly had to conduct a second, more thorough search of the calendar book and cellular telephone to ascertain their prosecutorial value.

■■ It is not the fact that the search was conducted after the initial inventory of the vehicle's contents, but rather the purely investigatory nature of the second search that renders it suspect. Although an officer's investigatory motive does not invalidate an otherwise appropriate inventory search, *see Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), once the purposes of the inventory have been met, a subsequent, purely investigatory search is improper. As a rule, "[t]he fruit of inventory searches ... will be suppressed when the searching agents act in bad faith or solely for the purpose of investigation." *United States v. Thompson,* 29 F.3d 62, 65 (2d Cir.1994).

In a similar case, the Ninth Circuit held that while an agent may "leaf through" a notebook in a "cursory" inventory search "to see if anything [is] stuck inside," a subsequent, purely "investigatory" examination is not. *United States v. Nagano,* No. 91–10055, 1992 WL 73177, *3, 959 F.2d 243 (9th Cir. April 9, 1992) (table). *See also United States v. Khoury,* 901 F.2d 948, 957–59 (11th Cir.1990) (suppressing evidence gained from notebook that had received cursory glance at inventory search and revealed to be of evidentiary value only upon subsequent warrantless investigatory search). The agents in this case, as in *Nagano* and *Khoury,* conducted purely investigatory examinations to mine the items for information rather than to ascertain whether they contained property to be safeguarded.

Because the purely investigatory search was conducted without a warrant, the calendar book and cellphone will be suppressed. *See United States v. Santos,* 961 F.Supp. 71, 73–74 (S.D.N.Y.1997) (finding that "affirmative, investigatory act" of reading all written material among defendant's possessions after separating out items with potential evidentiary value during inventory search exceeded inventory search exception); *United States v. Palacios,* 957 F.Supp. 50, 55 (S.D.N.Y.1997) (stating that government's theory that "searching for evidence is a permissible purpose for inventory searches" in effect "eliminates the need for a jurisprudence of permissible 'inventory' searches.").

### Conclusion

For the foregoing reasons, the photograph shall be admissible. Only the calendar book and cellular telephone are suppressed.

It is so ordered.