**UNITED STATES of America,**

v.

**Windell THOMPSON, Defendant.**

**No. 1:04CR66LEKDRH.**

United States District Court,
N.D. New York.

Dec. 7, 2004.

Paul D. Silver, Albany, NY, for Plaintiff.

Thomas J. O'Hern, Gerstenzang, O'Hern Law Firm, Albany, NY, for Defendant.

### MEMORANDUM DECISION AND ORDER [1]

KAHN, District Judge.

Presently before the Court is an omnibus motion by defendant Windell Thomp-

---

1. For printed publication in the Federal Reporter.

son ("Thompson"). On July 14, 2004, Thompson was indicted for conspiracy to distribute more than fifty grams of crack cocaine, a form of cocaine base, a Schedule II controlled substance. Superseding Indictment and Special Information (Dkt. No. 9) at Count 1. That indictment also included five additional counts for intent to distribute crack cocaine, each count addressing distribution on different days. *Id.* at Counts 2—6. Of those five counts related to distribution, two allege that Thompson acted on March 7, 2003 and March 17, 2003 with co-defendant Jason White ("White"), and the remaining three counts indict only Thompson for distribution offenses on April 2, 2003, April 9, 2003, and April 17, 2003. *Id.*[2]

Thompson now moves the Court for several forms of relief: (1) leave to file a motion to preclude statements that may be produced by the United States after a decision on the instant omnibus motion, (2) disclosure of exculpatory or impeachment materials, and (3) a hearing to determine the audibility and admissibility of audio tapes.

## II. DISCUSSION

### (a) Leave to file further motions

Thompson explains to the Court that the only statement by Thompson that the United States has disclosed was one he made in a debriefing. Thompson states that because the United States has agreed not to introduce that statement in its case-in-chief, Thompson will not move to suppress it. However, Thompson requests that if the United States decides to use that debriefing statement, or any other

statement that Thompson made which has not yet been disclosed, that he be granted leave of the Court to address the admissibility of those statements. The Court grants leave to Thompson to file such future motions.

### (b) *Brady* and *Kyles* disclosures

Citing to *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and Federal Rule of Criminal Procedure 16, Thompson asks the Court to order disclosure of specific information, itemized in his brief as requests A through U. In summary, these requests seek:

(A), (H) The United States' witness list with addresses, including witnesses to the underlying events that the United States does not anticipate calling;

(B) (F) Disclosure of inducements made or circumstances surrounding the United States' witnesses' cooperation in this and past cases, including threats that were made to them or their families and promises of leniency or immunity;

(G), (H) Statements made by the United States' witnesses or prospective witnesses;

(I) (J) Documentation of any past criminal activities of the United States' witnesses, including those activities that the United States has decided not to prosecute;

2. Although not relevant to the instant motion, the indictment also contains three allegations which may enhance Thompson's sentence if convicted: two disclose prior drug felony convictions and the third alleges possible enhancements due to the quantity of crack co-caine he possessed and his possession of a firearm. There is also a forfeiture allegation which alleges that Thompson shall forfeit to the United States any proceeds or property he received from the crimes alleged in the indictment. Superseding Indictment (Dkt. No. 9).

(K) Information demonstrating prior misconduct of a witness in his role as a Confidential Informant ("CI"), the refusal by a witness to testify in a past role as a CI, and any allegation that a witness entrapped another person to commit an offense;

(L) (M) Information demonstrating lack of candor or untruthfulness of a witness in this or a prior case;

(N) Assets obtained by a CI in connection in connection with his legal activities over the past ten years;

(O) Official records maintained by law enforcement regarding the facts of a witness' cooperation, for example, names or false identities assumed and records requiring him to protect that identity, or any contracts or fee agreements signed with the government relating to his cooperation;

(P) Results of a witness' polygraph or information concerning his failure to take one;

(Q)-(T) Information regarding a witness' mental and physical health, including that related to physical impairments and drug or alcohol abuse; and

(U) A witness' probation records if he has been placed on probation or had a Pre–Sentence Investigation conducted.

In response, the United States posits that the list goes beyond the requirements of discovery imposed by the Federal Rules of Criminal Procedure and relevant case law, and therefore contends that "a seriatim response to defendant's request should be deemed by the Court to be unnecessary and burdensome." U.S. Memo. (Dkt. No. 23) at 2. However, the United States "acknowledges its obligation to provide impeachment and exculpatory evidence and agrees to do so." *Id.*

(i) *United States' Witness List*

■ "[N]o where in the United States Code or the Federal Rules of Criminal Procedure are district courts explicitly authorized or forbidden to order pre-trial disclosure of government witnesses in noncapital cases." *United States v. Cannone*, 528 F.2d 296, 298 (2d Cir.1975). Rather, it is within the discretion of the district court judge to order the United States to disclose its witness list prior to trial. *Id.* In making this determination, "[a] district court should require the government to provide a witness list only if the defendant makes a specific showing that such disclosure is both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case." *United States v. Santoro*, 2004 WL 2346621, *3 (S.D.N.Y.2004), 2004 U.S. Dist. LEXIS 20899, *8 (denying disclosure of witness list because defendant only claimed that it "might be beneficial to a proposed entrapment defense") (citing to *United States v. Bejasa*, 904 F.2d 137, 139–40 (2d Cir.1990)); *see also Cannone*, 528 F.2d at 301–02 (holding that district court abused its discretion in ordering witness list disclosure where defendant made only a conclusory claim that it was necessary for trial preparation, and defendants had already been charged with beating a grand jury witness).

■ Thompson requests disclosure of the United States' witness list because "[f]rom a review of the discovery to date, it is clear that the CI is the only witness to the drug transactions . . . ." Def. Mem. (Dkt. No. 17) at 1. However, since the time of the indictment, the CI has been indicted as a co-defendant. Thereafter, the United States Attorney again informed defense counsel that the CI may chose to testify against Thompson. Thompson Mem. (Dkt. No. 17) at 1. Considering the CI is the only other disclosed witness to the underlying

transactions, it is material to Thompson's defense whether the CI will testify. If he will not, then the identities of other witnesses who may testify against Thompson are material to the case and necessary in crafting a defense. Moreover, the United States does not present a specific reason why disclosure of its witness list would be detrimental, but rather only urges the Court that Thompson is not entitled to such information at this time. U.S. Mem. (Dkt. No. 20) at 2.

Because the identities of the United States' witnesses are material to his defense, the United States shall disclose a list of its witnesses no later than 45 days prior to the start of trial.[3] *See e.g., United States v. Giffen*, 2004 WL 1475499, *5, 2004 U.S. Dist. LEXIS 12194, *14—15 (denying request for immediate disclosure of witness list because of failure to show a particularized need, but "[n]evertheless" ordering a disclosure of witnesses that United States intends to call in its case-in-chief ten business days prior to the start of trial).

#### (ii) *Disclosure of other materials*

■ Thompson makes extensive requests for information that are properly characterized as requests for impeachment materials. For example, as noted in the list above, in Paragraph (G), Thompson seeks an order for disclosure of:

> Any statement made, information or document provided by a prospective Government witness that conflicts in part or in whole with: (1) the statement of another prospective witness, (2) a prior statement made by the same Government witness with regard to the subject matter of the expected trial testimony of

witness, or (3) any other document or witness .... Thompson Mem. (Dkt. No. 17) at 4, ¶ G.

"Rule 16(a)(2) states that the discovery of statements of prospective government witnesses is to be governed solely by the Jencks Act. Since there has not yet been any testimony in this case, the Jencks Act prevents this court from ordering such disclosure that is not already discoverable pursuant to *Brady*." *Santoro*, 2004 WL 2346621, at *2, 2004 U.S. Dist. LEXIS 20899, *6–7. Similarly, the information in Thompson's other enumerated requests would best be characterized as evidence that may be exculpatory or that could be used to impeach a government witness. Such materials must be disclosed only if required by *Brady* or *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

■ "Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or punishment." *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir.2003) (internal citations and quotations omitted). "This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir.2001) (citing to *Giglio*, 405 U.S. at 154, 92 S.Ct. 763). Within the extensive *Brady* framework that has developed, the Supreme Court has explained that evidence is "material" if its non-disclosure "would deprive a defendant of a fair trial." *Id.* at 140 (citing to *Bagley*, 473 U.S. at 675, 105 S.Ct.

---

**3.** To the extent that Thompson also requested the names of witnesses to the underlying transactions that the United States does not intend on calling, those names need not be disclosed pursuant to this order. Rather, that information must be disclosed only if it would constitute exculpatory or impeachment evidence discussed below.

3375; *Agurs*, 427 U.S. at 108, 96 S.Ct. 2392).

■ "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant ...." *Id.* at 146. In fact, the Court of Appeals has specifically held that it was error to decide that "*as a general rule*, due process of law requires that the Government, following indictment, disclose *all* exculpatory and impeachment material *immediately* upon demand by a defendant". *Id.* at 140. To comply with due process of law, disclosure must be made "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *Id.* at 142 (collecting cases).

■ "A prosecutor's *Brady* obligation is independent of a defendant's request for *Brady* materials. Regardless of a defendant's request, the government violates its duties under *Brady* if it suppresses evidence that, if disclosed, would have had a reasonable probability of changing the outcome of the proceedings." *Jackson*, 345 F.3d at 68–69 (2d Cir.2003) (internal citations and quotations omitted). That the government has an independent duty to disclose *Brady* material is recognized by the United States. U.S. Memo of Law (Dkt. No. 23) at 2 ("The government acknowledges its obligation to provide impeachment and exculpatory evidence and agrees to do so.").

The Court will not now issue an order that the United States disclose *Brady* material because the duty is one which, as the United States has recognized, is independent. The burden to produce exculpatory materials to Thompson is on the United States, and no order of this Court is necessary to ensure that. The United States' representation that it will abide by its duty

is sufficient. *See United States v. Jennings*, 1998 WL 865617, *3 (N.D.N.Y. 1998), 1998 U.S. Dist. LEXIS 19380, *8 (McAvoy, C.J.).

### (c) Audibility Hearing

There are also audio tapes that the United States has in its possession that it anticipates presenting as evidence at trial. U.S. Mem. (Dkt. No. 23) at 1. The United States gave those tapes to defense counsel for review. Thompson Mem. (Dkt. No. 17) at 7. After reviewing those tapes, Thompson's counsel contends that the "quality is so low as to render the majority of the tapes unusable." *Id.* at 7. Therefore, Thompson requests an audibility hearing to determine whether the tapes are sufficiently audible and should be admitted.

■ In *United States v. McDonald*, 198 F.3d 235 (2d Cir.1999), 1999 U.S.App. LEXIS 22819 (unpublished), the Second Circuit held that the district court did not abuse its discretion in admitting audio tapes that recorded the narcotics transactions between the informant and the defendant. The Second Circuit explained the standard:

A tape recording is not inadmissible merely because portions of it are inaudible. *See United States v. Arango–Correa*, 851 F.2d 54, 58 (2d Cir.1988). "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge." *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir.1973) .... If a tape recording is probative, it is preferable to admit it even if parts are inaudible. *See Arango–Correa*, 851 F.2d at 58; *Bryant*, 480 F.2d at 790. *Id.* at *2, 1999 U.S.App. LEXIS 22819, at *4.

In *McDonald,* the Appeals Court recognized that defense counsel "did not . . . point to any material particular [sic] in which the transcript of the tape was inaccurate, and a tape that is sufficiently audible to be accurately transcribed should be sufficiently audible not to mislead a jury." *Id.* at *2, 1999 U.S.App. LEXIS 22819, at *5. The Court will therefore hold a hearing to determine whether the tape recordings are admissible in accordance with the instruction of the Second Circuit.

## III. CONCLUSION

In accordance with the above, it is hereby

ORDERED, that Thompson is granted leave of the Court to address the admissibility of the debriefing statement in a future motion if the United States determines that it will admit that statement, or any other statement made by Thompson that may be disclosed; it is further

ORDERED, that Thompson's motion for an order that the United States disclose its witness list is **GRANTED**; and it is further

ORDERED, the United States shall disclose its witness list no later than 45 days prior to the start of trial; it is further

ORDERED, that Thompson's motion for an order directing disclosure by the United States is **DENIED**, except as explained above; and it is further

ORDERED, that a hearing will be held on December 16, 2004 at 11:00 A.M. to determine the admissibility of the audio tapes; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.